CRAWFORD v. WOODS et al. (No. 5581.)

(Court of Civil Appeals of Texas. Austin. Feb. 25, 1916. On Motion for Rehearing, May 3, 1916.)

1. CONTRACTS ⊛88—WRITTEN CONTRACTS—CONSIDERATION.
A written contract, by statute, imports a consideration.
[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 403–405, 407; Dec. Dig. ⊛88.]

2. APPEAL AND ERROR ⊛901 — REVIEW — FINDINGS OF TRIAL COURT.
One attacking the findings of the trial court has the burden of affirmatively establishing error on appeal.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1771, 3670; Dec. Dig. ⊛901.]

3. BROKERS ⊛71—COMMISSIONS—RIGHT TO.
Where a vendor refused to enter into a contract for the sale of lands at a price less than listed, until the broker had agreed not to demand commissions unless the sale was consummated, and it was contemplated by the parties that the contract between the purchaser and vendor should not be binding until reduced to writing, the broker was not at that time entitled to commissions and so his agreement to demand a commission only in event of a consummated sale was supported by a consideration.
[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 56; Dec. Dig. ⊛71.]

4. BROKERS ⊛54—COMMISSIONS—RIGHT TO.
Unless a broker produces a purchaser ready, willing, and able to buy on the terms offered, he is not entitled to commissions.
[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 75–81; Dec. Dig. ⊛54.]

5. BROKERS ⊛61(1) — COMMISSIONS—AGREEMENTS.
While a broker who procures a purchaser ready, able, and willing to buy is ordinarily entitled to commissions where the sale fails because of defects in the vendor's title, a broker who agreed to demand no commissions unless the sale was actually consummated is entitled to none where the sale was not made because the purchasers refused to buy on account of defects in the vendor's title.
[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 77, 78, 92; Dec. Dig. ⊛61(1).]

---

⊛For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Action by Joe Crawford against W. M. Woods and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Houghton Brownlee and J. B. Robertson, both of Austin, for appellant. Edwin H. Yeiser and White, Cartledge & Graves, all of Austin, for appellees.

KEY, C. J. This is a suit by a real estate agent seeking to recover compensation alleged to have been earned as such agent. There was a nonjury trial, which resulted in a judgment against the plaintiff, and he prosecutes this appeal. There is no statement of facts, and the case is submitted in this court upon the following findings of fact filed by the trial judge:

"1. On August 10, 1913, the defendant W. M. Woods authorized plaintiff, a real estate broker, to sell for him a tract of land in Williamson county, Texas, described in paragraph 2 of plaintiff's first amended original petition at $30 per acre in cash and notes, agreeing to pay to the plaintiff a commission of 5 per cent. of the sale price thereof.

"2. That thereafter plaintiff introduced the said Woods to S. W. Redd, W. H. Todd, and W. E. Williamson, and on the same day they agreed to buy the said property, and the defendant agreed to sell the same to them at $27.50 per acre, payable one-third in cash on January 1, 1914, purchasers to assume payment of a note for $15,000, with interest to accrue thereon from January 1, 1914, such note being secured by a lien upon said property, and to give note for the balance of the consideration payable on or before January 1, 1916, the cash to be paid and notes and deed executed and exchanged on January 1, 1914.

"3. That thereupon the defendant went out and made investigations with regard to the ability of said purchasers to carry out said contract, and afterwards returned stating that he had satisfied himself on this point and was ready to proceed. A written contract was drawn up by a clerk in the presence of the defendant and said Todd, Williamson, and Redd, such contract providing for the purchase by them from him of said property upon said terms.

"4. Thereupon the defendant announced that he would not sign any contract without consulting an attorney, and he thereupon went alone to the office of Mr. E. Cartledge. The plaintiff, Crawford, shortly afterwards came into the office, and he and the defendant agreed that no commission should be paid to plaintiff in connection with said property unless the sale to Todd, Williamson, and Redd was actually consummated by payment of the cash consideration and execution and delivery of the notes and deed on January 1, 1914.

"5. The said Cartledge drew up a contract providing for the sale of the said property; such contract being identical with that previously drawn up as above stated, except that the contract drawn by said Cartledge provided for execution by defendant of a warranty deed, which provision was not included in the body of the other, said contract being in words and figures as follows:

" 'The State of Texas, County of Travis.

" 'This contract made and entered into on this the 14th day of August, A. D. 1913, by and between W. M. Woods, party of the first part, and W. H. Todd, W. E. Williamson, and S. W. Redd, parties of the second part, all of Travis county, Texas, witnesseth:

" 'I. The party of the first part agrees to sell to said parties of the second part, and the said parties of the second part agree to buy from the said party of the first part eleven hundred and seventy-seven (1,177) acres of land, more or less, situated in Williamson county, Texas, known as the "Carothers place," also known as the "Dimmitt place," lying about nine miles west of the town of Georgetown in said Williamson county, Texas, for a consideration of twenty seven and $50/100$ dollars ($27.50) per acre, the quantity of said tract of land to be determined by a survey to be made by the said party of the first part at his expense.

" 'II. The said parties of the second part agree to pay for said land the price stipulated in the first paragraph hereof as follows: One-third of the total amount is to be paid in cash on January 1, 1914, and the remainder of the consideration for said land here agreed to be purchased and sold is to be paid as follows: The assumption by the said parties of the second part of a note for the sum of fifteen thousand dollars ($15,000) with interest to accrue thereon from and after January 1, 1914, which the said party of the first part has agreed to execute to —— Atkinson, in the purchase of said property by him from said Atkinson, and the balance of said consideration for said land here agreed to be purchased and sold is to be evidenced by the joint note of said parties of the second part, made due and payable to the said party of the first part on or before January 1, 1916, with interest thereon at the rate of 8 per cent. from January 1, 1914, until paid, interest to be made payable annually as it accrues.

" 'III. It is mutually agreed by and between the parties hereto that the said parties of the second part, in the event this transaction is consummated, are to have possession of said property on January 1, 1914, and all taxes which shall accrue against said property up to January 1, 1914, shall be paid by the said party of the first part.

" 'IV. It is understood by the parties hereto that the said party of the first part is under contract to purchase said property from the said —— Atkinson and his wife, and this agreement is made subject to the consummation of said contract between said party of the first part and the said Atkinson.

" 'V. The said party of the first part agrees to furnish a complete abstract of title to said property to the said parties of the second part within 10 days after the consummation of said contract between the said party of the first part and the said Atkinson, and the said parties of the second part are to have 30 days after said abstract has been turned over to them within which to have the same examined by attorneys of their choosing and at the end of said 30 days, the said parties of the second part hereby agree to immediately notify the said party of the first part whether or not the title to said property is acceptable to them.

" 'VI. The said parties of the second part have this day deposited with the Citizens' Bank & Trust Company of Austin, Texas, the sum of five hundred dollars as earnest money, together with copy of this contract, and it is understood that if the title to said property is not acceptable to said parties of the second part, said sum of money shall be returned to said parties of the second part, but if the title to said property is approved by said parties of the second part, they here agree and bind themselves to close this transaction on January 1, 1914, upon the terms and conditions herein stipulated, and in the event of so closing this contract, the said sum of five hundred dollars is to be applied in part on the cash payment hereinabove provided which is to be made upon said land: Provided, further, that if this contract is closed upon the conditions here stated, the said party of the first part is to execute to said parties of the second part a general warranty deed to said property in which the vendor's lien is to be

retained to secure the purchase price, as herein stipulated, that is to secure said fifteen thousand dollar note, as well as their joint note hereinabove referred to.

" 'In testimony whereof, this contract is executed in triplicate by the parties hereto on this the day and year first above written.

" 'W. M. Woods,
" 'Party of the First Part.
" 'W. H. Todd,
" 'W. E. Williamson,
" 'S. W. Redd,
" 'Parties of the Second Part.'

"6. That the said contract, same being set out in paragraph 5 of plaintiff's first amended original petition, was signed by all parties on August 14, 1913.

"7. Said Todd, Williamson, and Redd were introduced to the defendant and negotiations started on August 12, 1913.

"8. That shortly after the defendant delivered to said Todd, Williamson, and Redd an abstract of title to said property which was by them delivered to their lawyers, Messrs. Sandbo & Shelton, of Austin, Texas, who within 30 days thereafter being authorized by said Todd, Williamson, and Redd to do so, verbally accepted the title to said property and afterwards wrote to the defendant a letter as follows:

" 'September 17, 1913.

" 'Mr. W. M. Woods—Dear Sir: We told Mr. Cartledge, your agent and attorney here, yesterday, and we repeated it to him to-day, that Mr. Todd and others have decided to accept the title to your Williamson county land for the sale of which you entered into a contract some time ago. While we do not consider this by any means a perfect title, in fact realize that it is subject to some objections, they will carry out their part of the contract, depending as much on your general warranty which they will construe to cover every defect in the title, as they depend upon the abstract for a showing as to the character of title.

" 'While our notice to your agent and attorney is satisfactory under the law, it occurred to us to also notify you of this fact.

" 'Yours truly,	Sandbo & Shelton,
" 'Attys. for Will Todd et al.'

"8a. That subsequent to the signing of said contract the defendant had a survey made of said land showing that it contained 1,159¾ acres.

"9. That shortly thereafter said Todd, Williamson, and Redd entered into a contract with C. E. Clinger of Travis county, Texas, in words and figures as follows:

" 'The State of Texas, County of Travis.

" 'Know all men by these presents, that we, S. W. Redd, W. E. Williamson, and W. H. Todd, of Travis county, Texas, have this day entered into the following contract with C. E. Clinger, of Travis county, Texas, viz.:

" 'The said S. W. Redd, W. E. Williamson, and W. H. Todd covenant that they have a good and valid contract for the purchase of the following described property, to wit: Eleven hundred and seventy-seven acres of land more or less, situated in Williamson county, Texas, which is known as the Carothers place, and also known as the Dimmitt place, and situated about nine miles northwest of the town of Georgetown; and for the consideration hereinafter set out, do hereby bind and obligate ourselves to grant, sell, and convey said property unto the said C. E. Clinger by general warranty deed, or so cause the holders of the legal title to said property to so convey the same to him upon the payment by him of the consideration hereinafter set out.

" 'The said S. W. Redd, W. E. Williamson, and W. H. Todd bind and obligate themselves to deliver to the said C. E. Clinger a complete abstract of title to said property forthwith, and it is agreed that he shall have 15 days from the time it is so delivered to him within which to have the same examined; and in the event that the same shows a good and marketable title to said property in the person or persons who are to make the conveyance to the said C. E. Clinger, he binds and obligates himself to purchase the same conveyed to him by general warranty deed for the following consideration, to wit:

" 'The sum of seven dollars and fifty cents per acre to be paid in cash on delivery of the deed to the said S. W. Redd, W. E. Williamson, and W. H. Todd,. subject to the payment hereinafter mentioned to be made out of same, for their equity in said land under said contract; and the sum of twenty-seven dollars and fifty cents per acre in addition thereto, shall be paid as follows to the party or parties entitled to receive the same, viz.: One-third in cash on delivery of the deed; fifteen thousand dollars by the assumption of the payment of the note for said sum now constituting a lien on said property which matures and becomes due on or before January 1, 1926, and bears 8 per cent. interest; and the remainder in a note, with interest from January 1, 1914, at 8 per cent. interest, to become due January 1, 1916; but it is agreed and understood that the said C. E. Clinger assumes the payment of interest of said note for fifteen thousand dollars from January 1, 1914, and that in the event that there is any accrued interest on the same at the latter date, he is to be accounted for for the same. It is further agreed that all taxes on said property shall be paid to January 1, 1914, by the sellers, or that the said C. E. Clinger shall be accounted to for the same.

" 'It is agreed that said property shall be surveyed by the county surveyor of Williamson county, or by some surveyor who is acceptable to all parties concerned, at the expense of the sellers for the purpose of determining the number of acres in the same as a basis for this sale.

" 'In the event that said abstract of title proves defective, the parties furnishing the same shall have a reasonable time in which to perfect the same, provided that it shall be perfected not later than January 1, 1914.

" 'Possession of said property is to be delivered to the said C. E. Clinger on January 1, 1914, and he shall not be required to accept said deed until said date.

" 'The said C. E. Clinger deposits, together with this contract, the sum of five hundred dollars with the Citizens' Bank & Trust Company of Austin, Texas, to guarantee the performance of this contract by him, which shall be refunded to him in the event that said title proves to be defective; but in the event that the same proves to be good and marketable, and he fails to comply with this contract, the same may be forfeited to the sellers as liquidated damages. In case this sale is completed said sum of five hundred dollars shall be applied in payment of part of the cash consideration to be paid by the said C. E. Clinger.

" 'It is further agreed that the following payments are to be made out of the cash payment to be made by the said C. E. Clinger on the delivery of said deed, and that it shall be the duty of said bank to see to the payment of same to the person hereinafter named, to wit:

" 'To Mrs. D. M. Bogle, the sum of six hundred sixty-six and two-third dollars. To J. E. Rowe, the sum of three hundred thirty-three and one-third dollars.

" 'To G. B. McCormick, the sum of five hundred dollars; and

" 'To J. D. Mosely, the sum of one thousand dollars.

" 'Said sums to be paid to said parties in full discharge of all claims they have in or to said property, or against any of the parties to this contract for services rendered in securing a purchaser or purchasers for the property, or otherwise; and it is agreed that the said G. B. McCormick shall be required to execute to the said C. E. Clinger such character of release or quit-

claim of all his right, title, and interest in and to said property, as the attorney for the said C. E. Clinger may request; and that said sum shall not be paid to him until such instrument is duly executed.

"'Witness our hands at Austin, Texas, this the 5th day of September, A. D. 1913.'

"9a. That said contract was signed and acknowledged before a notary public for Travis county, Texas, by all the parties thereto.

"10. That thereupon said Todd, Williamson, and Redd delivered to said Clinger the abstract of title above referred to and he delivered it to his lawyer, Mr. E. H. Yeiser, of Austin, Texas, with the request that he examine and report upon the title.

"11. That Mr. Yeiser examined said abstract of title and reported to said Clinger that in his opinion the title of defendant Woods to said property was neither good nor marketable.

"12. Thereupon said Todd, Williamson, and Redd delivered the abstract to Mr. J. M. Patterson, an attorney of Austin, Texas, with the request that he examine the same and report upon the title, and he reported to them that in his opinion the title of defendant Woods was neither good nor marketable.

"13. That said Clinger, if the title of defendant Woods to said property had been good, would have complied with his contract of purchase entered into with said Todd, Williamson, and Redd, and would have paid the money and executed the notes provided for therein.

"14. That said Clinger had on hand at that time about $5,000 in cash and was the owner of about 600 acres of cultivated farming land in Travis county, forming no part of his homestead upon which there was a mortgage to secure a debt of $4,000. That said Clinger expected to procure the balance of the cash necessary to carry out his purchase from Messrs. Todd, Williamson, and Redd by sale of 200 acres of land property to John B. Moore of Austin, Texas, who had agreed to buy the same from him and to pay him therefor $110 per acre all in cash, and that said Moore was ready, able, and willing to purchase said property and make said payment had said Clinger desired to sell him said land and would have done so but for the fact that said Clinger, after his trade with Todd, Williamson, and Redd, failed to go through, did not desire to sell said 200 acres.

"15. That said Todd, Williamson, and Redd did not have on hand sufficient money to make the cash payment provided for in their contract with defendant Woods, but the said Todd had on hand in cash about $5,000, and the said Redd about $1,500, and they expected to procure the balance by a sale or hypothecation of the property or by borrowing the same, but did not introduce any evidence of any prospect of securing such loan.

"16. That thereafter said Clinger notified Messrs. Todd, Williamson, and Redd that he would not accept the title to said property and refused to go on with the trade on the ground that the title of defendant Woods thereto was neither good nor marketable.

"17. That thereupon said Todd, Williamson, and Redd also refused to carry out their contract with defendant Woods, stating as ground for such refusal the fact that defendant Woods' title to said property was neither good nor marketable, delivering to defendant at said time a letter written by their attorney Mr. E. H. Yeiser, as follows:

"'Austin, Texas, December 31, 1913.

"'Mr. W. M. Woods, Austin, Texas.—Dear Sir: This is to advise you that we will refuse to perform our part of the contract entered into with you for the purchase of the Carothers or Dimmitt place consisting of about 1,159 acres part of the G. Fisk league, and the Wm. H. Munroe and Henry Garmes surveys in Williamson county, Texas, because it appears that you have no title to the property to convey to us,

and as the contract mentioned requires you to convey to us a marketable title, being such as will support a warranty deed, there is a failure of consideration in the failure of the title, and a breach of the warranty in that the title to the property has proven to be unmarketable.

"'The title is objected to in that it appears on pages 93 to 95 of the abstract of title to the property that P. H. Dimmitt willed the property to his daughter, together with other property in trust with a provision that she should receive only $100 per month from the same until she should become 25 years of age, at which time the estate should be delivered to her. It further appears from the abstract of title that the trustee attempted to resign before the daughter became 25 years of age, she being only 23 years of age, and that she then, joined by her husband, conveyed the property to you.

"'Under the terms of the will, it is clear that a trust was created for the daughter, and that the legal title to the property vested in the trustee, who was to keep and preserve the property for her until her twenty-fifth year. Dulin v. Moore, 96 Tex. 135 [70 S. W. 742].

"'On the other hand it is clear that the trust could not be terminated by the court so as to divest the trustee of the legal title and invest it in the daughter, and the resignation of the trustee was void, and that he still holds the legal title to the property for the purpose of executing the trust. Monday v. Vance, 92 Tex. 428 [49 S. W. 516]; Lanius v. Fletcher, 100 Tex. 555 [101 S. W. 1076].

"'It has been intimated that if the daughter lives until she is 25 years of age, that the title to the property will pass to you under the warranty deed made to you by her and her husband by way of estoppel. This is not a sound proposition, as a married woman is not estopped by her deed. Wadkins v. Watson, 86 Tex. 194 [24 S. W. 385, 22 L. R. A. 779]; Daniel v. Mason, 90 Tex. 240 [38 S. W. 161, 59 Am. St. Rep. 815].

"'The title is further objected to in that it appears that it was at one time vested in John J. Dimmitt and afterwards partitioned among persons claiming to be his heirs; and there is nothing in the abstract to show who were his true heirs. It further appears that he had a child by the name of W. W. Dimmitt, and it does not appear that he received anything in the partition.

"'You are further advised that we negotiated a sale of this property to Mr. C. E. Clinger of Austin, Texas, so as to net us a large profit, and that we were unable to close same on account of the defects above mentioned, and others as shown by the opinion of his attorney, dated October 18, 1913, and on file with the C. B. & T. Co. of Austin, Texas. Since that time, a number of attorneys have had occasion to pass on the title, and it has been declared unmarketable by all of them. And it appears that the title cannot be corrected until your grantor becomes 25 years of age, which will be some time yet. We have been greatly damaged by the failure of this title, and again declare the same unsatisfactory to us, and request that we be compensated for our damages.

"'We are delivering a copy of this notice to the bank mentioned to be deposited with the contract referred to, and to serve as notice to it not to deliver our deposit to you.

"'Respectfully,
"'S. W. Redd,
"'W. H. Todd,
"'W. E. Williamson,
"'By Atty. Ed. H. Yeiser.'

"18. That at the time defendant listed the said property with plaintiff for sale plaintiff had no knowledge that deed had not been executed and delivered conveying same to defendant, but learned for the first time when the contract with Todd, Williamson, and Redd was drawn up that defendant had a contract to purchase which had not yet been carried out by payment

of money and execution and delivery of deed and note.

"19. That said contract of purchase was performed, and on August 18, 1913, Lillie A. Atkinson and her husband, Charles B. Atkinson, executed a warranty deed purporting to convey the said property to the defendant W. M. Woods for a consideration of $5,000 cash paid and one note for the sum of $15,000 dated January 1, 1914, due on or before 12 years after date being [bearing] 8 per cent. interest from date.

"20. That defendant Woods derived his title to said property solely through the said Lillie A. Atkinson and Charles B. Atkinson, and they derived their title thereto solely through and under the will of P. H. Dimmitt, deceased, the father of said Mrs. Lillie Atkinson, who owned the same at the time of his death.

"21. That the said Lillie A. Atkinson, Charles B. Atkinson, and the defendant Woods had not altogether, or by themselves, or by agents or tenants had actual possession of said property on January 1, 1914, for more than 2 years and 10 months.

"22. That the will of P. H. Dimmitt, deceased, which was duly probated in the county court of Williamson county, Texas, was as follows:

"'Last Will and Testament.

"'The State of Texas, Williamson County.

"'I, P. H. Dimmitt, of Williamson county, Texas, being of sound mind and disposing mind and memory do make and execute this my last will and testament hereby revoking the only other will I ever made it being the will executed by me on Feby. 28th, 1895, witness by J. E. Cooper and R. T. Cooper. .

"'1st.—I direct that all my just and legal debts and funeral expenses be first paid.

"'2nd.—My estate at this date consists entirely of my separate estate. There being no community estate. The property real and personal acquired since my marriages came to me by inheritance and by way of advancements from the estate of my father and mother, the increasement of rents and profits received during marriage not off-setting my losses and expenses.

"'3rd.—It is my will that my said wife, Mrs. Mamie Henley Dimmitt shall only receive from my separate estate an annuity payable monthly of one hundred dollars per month, or twelve hundred dollars annually as long as she remains single after my death, but the said annuity to cease and terminate at once upon her remarriage after my death. I qualify further said annuity as follows: If at my death I shall have acquired a community estate with my said wife Mrs. Mamie Henley Dimmitt and she declined to take solidly the annuity under the will, then the one-half of said community estate due my said wife shall be deducted from said annuity. In other words annuity shall not be paid for a period of months which at the rate of one hundred dollars per month would create a sum equal to her said one-half of said community estate aforesaid.

"'4th.—I hereby will and bequeath the residue of my estate, real, personal and mixed, to my daughter Lillie A. Dimmitt under the following provisions:

"'(a) The entire estate, real, personal and mixed after paying the annuity to my said wife under the terms and conditions provided for in section 3rd, shall be held by my executor herein after appointed in trust for my said daughter until she reaches her 25th birthday whether she remains single or marries. The said executor so holding, managing, controlling, investing and re-investing same in such securities as the law permits a guardian of the estate of minors —until my said daughter shall reach said age of twenty-five years when the same shall become hers in fee simple.

"'(b) From the date of my death my said daughter is to receive only an annuity of one hundred dollars per month or twelve hundred dollars annually, payable monthly, until her said 25th birthday. This annuity is also qualified as follows: If after my death my said daughter should claim and there should be determined that any part of my estate belongs to my said daughter in her own right as an heir of her deceased mother Mrs. Amanda Dimmitt then the said estate of inheritance of my said daughter shall be deducted from said annuity. In other words the annuity shall not be paid for a period of months which at the rate of one hundred dollars per month will create a sum equal to her estate of inheritance as aforesaid.

"'5th.—I hereby, nominate, constitute and appoint F. W. Carothers of Williamson county, Texas, as the executor of this my last will and testament and as guardian for my said daughter Lillie A. Dimmitt. I direct that the only court proceed to be had is the probating of this will,—the filing of an inventory of my estate as the law requires and my executor executing the statutory executor's bond.

"'In testimony whereof, I have hereunto set my hand this August 27th, 1902.
"'[Signed] P. H. Dimmitt.'

"'Signed, declared, and published by P. H. Dimmitt as his last will and testament in the presence of us the attesting witnesses who have hereto subscribed our names in the presence of the said P. H. Dimmitt and in the presence of each other at his special instance and request, this August 27, 1902.
"'[Signed] H. W. Harrel,
"'Robt. A. John.'

"23. That in cause No. 7003 pending in the district court of Williamson county, Texas, entitled Charles B. Atkinson and Wife, Lillie A. Atkinson, v. F. W. Carothers, Executor, wherein plaintiffs sued to recover full title, control and possession of all property of the estate of said P. H. Dimmitt free from any right of the executor of said will, the said Lillie A. Atkinson and her husband agreed on March 6, 1911, with said Carothers, as executor, that a decree and judgment should be entered construing the said will of P. H. Dimmitt to vest, and that the full and complete legal title and beneficial interest to the property involved in said suit and belonging to the estate of P. H. Dimmitt at the time of his death had vested, should and did vest in said Lillie A. Atkinson, and that she was the only person having any beneficial right or interest therein, and it was further agreed by said parties that the provisions of said will directing that said executor have exclusive possession, care, and control and management of said property, and that he invest and reinvest same, should be adjudged by the court valid and subsisting provisions and effective until the said Lillie A. Atkinson should reach the age of 25 years on, to wit, October 1, 1914, and that the said Lillie A. Atkinson and her husband do nothing to interfere with or disturb said possession, control, and management until said date. That in said cause in accordance with said agreement the court rendered judgment that the full and complete legal title to the estate of P. H. Dimmitt, deceased, together with the beneficial interest therein was and had been by the terms of said will vested in the said plaintiff Lillie A. Atkinson, and that the provisions of said will that the possession of all the effects of said estate be and the same should remain in the possession of the executor, the said F. W. Carothers, and that he should have the exclusive care, control and management of the same as provided by and subject to the restrictions included in said will was and is a valid, legal, and subsisting and binding provision of said will; and it was further ordered, adjudged, and decreed by the court that the plaintiff Lillie A. Atkinson, joined by her husband, Charles B. Atkinson, as to their several prayers that they recover the possession of said estate

or any part of same, be denied, and as to such prayers they take nothing by said suit; and that there has been and was thereby vested in said Carothers as executor the exclusive possession, management, and control of said estate under the terms of said will. And it was further decreed and ordered by the court that said plaintiffs do nothing that would in any sense interfere with or disturb the care, management, and control of said estate of said Carothers as executor thereof or his possession thereto until said plaintiff Lillie A. Atkinson arrives at the age of 25 years.

"24. That on March 15, 1913, said F. W. Carothers as independent executor of said estate and said Lillie A. Atkinson and her husband filed in the county court of Williamson county, by which court the said will had been admitted to probate, an application tending [tendering] the resignation of said executor and alleging that said Mrs. Lillie A. Atkinson and her husband were qualified and capable of receiving, managing, controlling, and investing and reinvesting said estate, and that no debts existed against said estate, and that there was no reason for further administration thereof, or for further withholding the possession thereof from the said Lillie A. Atkinson, and that a full accounting of the property of said estate had been had, and requesting the court to accept his resignation as such executor and to discharge and release him and his bondsmen. That on the 14th day of April, 1913, the said county court upon a hearing of said application found that the allegations in said application and resignation were true, and that said Carothers was entitled to resign and be relieved from his duties, obligations, and liabilities as such executor, and that there was no necessity for further administration of said estate, and that said Lillie A. Atkinson was qualified by law to receive and manage her said estate, and it was thereupon ordered, adjudged, and decreed by the court that 'the resignation of the said F. W. Carothers as executor of the estate of P. H. Dimmitt, deceased, be and the same is hereby in all things received and accepted, and he is hereby discharged as such executor, and is hereby authorized and directed by the court to deliver to the said Lillie A. Atkinson, the person entitled to receive same, all the property and estate of the said P. H. Dimmitt, deceased, as shown by the Exhibit A attached to said application for resignation and settlement, and take the receipt of the said Lillie A. Atkinson and her husband, Charles B. Atkinson, for same; and it is further ordered, adjudged, and decreed by the court that the said F. W. Carothers and his surety, the said Fidelity & Deposit Company of Maryland, be and they are hereby relieved and discharged from any and all liabilities whatever, existing or to exist by reason of the bond or bonds heretofore executed by said F. W. Carothers, as such executor, and by said Fidelity & Deposit Company of Maryland, as surety for the said Carothers as executor of the said estate of P. H. Dimmitt, deceased, and it is further ordered by the court that said application for resignation and settlement, together with the exhibit attached to and made a part of same, be recorded in full in the probate minutes of this court, together with this order; and it is further ordered that the costs of this proceeding be paid out of said estate.'

"25. That the title of defendant Woods to said property in Williamson county, Texas, was neither good nor marketable.

"26. That had the said contract of sale entered into between defendant and Messrs. Todd, Williamson, and Redd been consummated by payment of cash and execution and delivery of deed and notes, a commission of 5 per cent. upon the total consideration would have been a reasonable compensation to plaintiff for his services

and he would have been entitled to receive a commission amounting to $1,593.95.

"27. That the said Lillie A. Atkinson became 25 years of age on October 1, 1914.

"28. That though plaintiff has often demanded payment of the sums claimed by him as commissions for procuring such purchasers no payment of any character has been made by defendant to him.

"29. That the abstract of title furnished by defendant Woods to said Todd, Williamson, and Redd showed all the facts as to the condition of the title herein set out, but plaintiff had no knowledge of any defect in the title before said Clinger refused to accept it.

"30. The defendant did not bring suit against said Todd, Williamson, and Redd to force them to comply with their contract of purchase and prior to the trial of this case permitted them to withdraw from the Citizens' Bank & Trust Company of Austin, Texas, the $500 earnest money they had previously deposited there as provided in said contract.

"31. Said C. E. Clinger had good fee-simple title to the 200 acres of land be [he] expected to sell to said J. B. Moore.

"32. Under the custom existing in Williamson and Travis counties, Texas, during said year a real estate agent on making a sale of property placed with him for sale was entitled to receive a commission of 5 per cent. of the purchase price, and plaintiff and defendant were each familiar with this custom and contracted with reference thereto.

"33. That in said counties in said year it was the custom for the vendor to execute a general warranty deed when he had entered into a contract to convey, but no agreement as to character of deed had been made.

"34. That if the title of defendant Woods to the said property in Williamson county had been good, and if the sale of same by Todd, Williamson, and Redd been made to Clinger, then said Todd, Williamson, and Redd would have been ready, able, and willing to carry out their contract of purchase with said defendant set out herein, and would have paid the money to said Woods and executed and delivered to him the notes called for therein within the time fixed therefor in said contract.

"35. That prior to the time said property was listed with plaintiff for sale, he had agreed with C. Wendlandt, of Travis county, Texas, to divide with him all commissions earned by plaintiff. That said Wendlandt had a partner, to wit, J. J. Milstead, with whom said Wendlandt had agreed to share his earnings, including amounts received from plaintiff. That prior to the filing of this suit the said Wendlandt and Milstead released, transferred, and assigned to plaintiff all their interest in and to the claims herein asserted, and plaintiff was at that time and has been ever since and now is the sole owner thereof."

### Opinion.

[1-4] Appellant contends that inasmuch as the record shows that appellee Woods placed the property in appellant's hands for sale as a broker and appellant procured purchasers who were ready, able, and willing to purchase the property upon terms satisfactory to Woods, and that a sale would have been consummated but for the fact that Woods' title to the property was neither good nor marketable, appellant was entitled to recover his commission. In support of that contention counsel for appellant have cited authorities to the effect that when a person claiming to own property places it in the hands of a broker for sale, and the broker has no knowledge of the condition of the title, the alleged

owner impliedly warrants that he has a good merchantable title, and therefore if a sale subsequently negotiated by the agent is not consummated on account of a defect in the title, nevertheless the broker has earned and is entitled to recover his commission. Conceding the correctness of that proposition of law, we do not think it should control in this case, because of the agreement referred to in the fourth finding of fact to the effect that no commission should be paid to appellant unless the sale then under consideration "was actually consummated by payment of the cash consideration and execution and delivery of notes and deed on January 1, 1914." It is true that appellant, in proper form, alleged in his answer that the agreement referred to was without consideration, was made after he had earned his commission and therefore was void, but the trial court's findings of fact do not support that pleading. If the agreement referred to was in writing, then, by force of statutory law, it imported a consideration; but whether in writing or oral, we find no finding of fact or other evidence to support the conclusion that the agreement was not based upon a sufficient consideration. While the trial court made no specific finding upon the question of consideration, it treated the agreement as constituting a valid contract, and the burden rests upon appellant to make it affirmatively appear in this court that the trial court committed error in that respect. Furthermore, we do not think that the facts found by the trial court show that appellant had earned his commission before the agreement referred to was made. Perhaps the trial court's second and third findings of fact, if looked to alone, support appellant's contention in that regard; but the fourth finding of fact and the latter part of the third indicate with reasonable certainty that it was understood by all the parties that the contract of sale was to be reduced to writing and signed by the vendor and vendees in order to make it a binding contract, and also indicate that in order to bring about the execution of such written contract, appellant agreed with appellee Woods that the latter was to pay the former no commission, unless the sale was actually consummated in the manner specified in the fourth finding of fact. If Woods was not willing to sign the contract unless appellant entered into the agreement referred to, then the action of Woods in signing the contract was a sufficient consideration for the agreement concerning the commission. Moreover, considering all the findings of fact, we think they fail to show that the proposed purchasers Redd, Todd, and Williamson, at the time the contract was made, were ready and able to make the first payment, and that they would not have been so had they not subsequently contracted to sell the property to Clinger, which contract of sale would probably never have been made by Clinger if Redd, Todd, and Williamson had not produc-

ed the written contract of sale from Woods to them. So we conclude that appellant had not earned his commission at the time he entered into the agreement with Woods to the effect that the payment of his commission was to be dependent upon the consummation of the deal between Woods and Redd, Todd, and Williamson; and as that agreement and the signing of the contract referred to seems to have been contemporaneous, we think the findings indicate that the signing of the contract by Woods was a consideration for the agreement between him and appellant.

[5] But it is contended on behalf of appellant that the agreement referred to will not protect Woods, for the reason that Woods was to blame for the failure to consummate the sale. In other words, the contention is that Woods agreed to convey to Redd, Todd, and Williamson a good merchantable title, while it is contended that the facts show that he had no such title, and therefore could not convey it, and that it was not intended by the agreement between appellant and Woods that he should have no compensation if the failure to consummate the sale resulted from a breach on Woods' part of his contract to convey a good title. Counsel for appellant have cited no authority in support of that contention, and we have found none. The findings of fact do not show that the contract contained any such stipulation. On the contrary, it is described by the trial judge as an agreement "that no commission should be paid to plaintiff in connection with said property unless the sale to Todd, Williamson, and Redd was actually consummated by payment of the cash consideration and execution and delivery of the notes and deed on January 1, 1914." If the contract read as indicated by the findings of fact, then it would seem that appellant agreed that he was to have no compensation if there was no sale of the property, regardless of the reason why the sale was not consummated. Such contract would violate no law or rule of public policy, and therefore it would be valid. If the evidence, whether written or oral, showed that the contract referred to was not intended to apply if the failure to consummate the sale was caused by appellee Woods, appellant should have brought up a statement of facts, so as to make it appear that the description of the agreement contained in the court's findings of fact is too general and not accurate. Not having pursued that course, appellant is bound by the finding referred to, and if this court is to indulge any presumptions in reference to what may have been the details of the agreement, such presumptions must be in support of the judgment rendered by the trial court.

All the questions presented in appellant's brief have been duly considered, and our conclusion is that the judgment of the trial court should be affirmed; and it is so ordered.

Affirmed.

185 S.W.—43

### On Motion for Rehearing.

Appellant's motion for a rehearing has received careful consideration, but we are still of opinion that this court has properly disposed of the appeal. At the time appellant Crawford and appellee Woods entered into the contract described in the fourth finding of fact appellant was apprised of the fact that Woods did not own the land, and therefore might never acquire title to it; and that fact, together with the terms of the contract to the effect "that no commission should be paid to plaintiff in connection with said property, unless the sale to Todd, Williamson, and Redd was actually consummated by payment of the cash consideration and execution and delivery of the notes and deed," indicate with reasonable certainty that it was intended by both parties to that contract that appellant should have no right to claim a commission unless the sale was actually consummated, regardless of who might be to blame for such failure.

Motion overruled.