**PRICE et al. v. LEE et al.**

**No. 2006.**

Court of Civil Appeals of Texas. Waco.

July 7, 1938.

Rehearing Denied Sept. 15, 1938.

J. W. Hassell and J. W. Hassell, Jr., both of Dallas, for appellants.

Wynne & Wynne, Angus G. Wynne, Wm. A. Wade, and Philip Brin, all of Longview, and Weeks, Hankerson & Potter, of Tyler, for appellees.

ALEXANDER, Justice.

This suit was brought by Arch Price, D. E. Stimson and C. O. Crockett against T. W. Lee and A. O. Phillips to recover a real estate broker's commission for the sale of an oil and gas mining lease. The jury returned a verdict on special issues and the court entered judgment thereon for the defendants. The plaintiffs appealed.

There is evidence to sustain the following material facts: Lee and Phillips were the joint owners of an oil and gas mining lease on certain land in Gregg county. There is no evidence, however, that they were partners. Arch Price and D. E. Stimson were associated together as real estate brokers at Tyler. C. O. Crockett was a real estate broker in Dallas. Price, apparently acting for himself and his associate Stimson, asked Lee if he would be interested in selling the lease in question and was told to see Phillips and that whatever Phillips did would be satisfactory with him. When Phillips was contacted by Price, he told Price that he and Lee would sell the lease for $60,000 net to them. There was nothing said about the payment of a commission in either of the above conversations. Price took the matter up with Crockett for the purpose of ascertaining whether Crockett had a purchaser for such property. After some negotiations Phillips wired Price on October 27, 1933, as follows: "Sixty thousand cash net to us best price Woods lease Stop Offer open until Monday October 30th. A. O. Phil-

lips." On the following day Crockett, who lived at Dallas, sent a wire to Phillips and Lee at Gladewater reading as follows: "This confirms purchase your two well Woods fee in Gladewater through Stimson for Fifty Seven Thousand cash net to you, subject to attorneys approval good merchantable title, oil runs to November 1st go to you stop Make confirmation this to me at once by wire. C. O. Crockett." This wire was delivered to Phillips, who, on the same day, wired Crockett as follows: "This confirms sale on two wells Woods lease fee as per your wire even date. Lee & Phillips." Within a day or two thereafter Price took Phillips to Dallas where he met Crockett. There was evidence that it was then disclosed for the first time that Crockett had sold the lease to a customer of his, the Rancho Oil Company, for $60,000. Phillips and Crockett then went to Fort Worth where they met a representative of the Rancho Oil Company and entered into a written contract for the sale of the lease, reading, in part, as follows:

"This contract between A. O. Phillips, Seller, and Rancho Oil Company, Purchaser, witnesseth:

"1. Seller agrees to sell and Purchaser agrees to purchase good and merchantable title to oil and gas lease and oil and gas leasehold estate thereby created, covering (describing the land in question) * * Conveyance is to contain general warranty and is to be executed by A. O. Phillips and T. W. Lee.

"2. Seller is to have ten days after date of this contract within which to perfect settlement with E. N. Rollins, J. D. Rollins and E. H. Lasseter of adverse claim asserted by said parties, as appears from contract and power of attorney filed with the County Clerk of Gregg County, Texas, under file No. 8128 and suit No. 155-C, styled E. N. Rollins et al. v. E. M. Woods, pending in the district court, Gregg County, Texas; settlement, if made, to be as per instruments prepared by Purchaser's attorneys, and this day delivered to Seller.

"3. If Seller cannot perfect said settlement on terms satisfactory to him, and reports such fact to Purchaser, this contract shall thereupon be terminated without further liability to either party.

"4. In the event said settlement is perfected, Purchaser shall have five full days from and after receipt of notice to it that such settlement has been made, within which to have its attorneys examine abstracts of title and prepare written opinion, etc. * * *

"9. Upon approval of title by Purchaser's attorneys, Purchaser agrees to pay as consideration for said oil and gas leasehold estate and wells and personal property thereon situated, as mentioned above, the sum of Sixty Thousand Dollars in cash, and Purchaser is authorized to pay direct to C. O. Crockett, Arch Price and D. E. Stimson, the sum of $3,000.00 of said purchase money, which is to be deducted from the total purchase price of $60,000.00. The remaining $57,000.00 shall be paid to T. W. Lee and A. O. Phillips, joint owners of said lease.

"Since T. W. Lee does not execute this contract, Seller agrees to obtain an order signed by T. W. Lee, authorizing the payment of said $3,000.00 direct to said C. O. Crockett, Arch Price and D. E. Stimson.

"It is understood that Purchaser is not to be liable for any Broker's commission and that the $3,000.00 Broker's commission is to be paid by Seller, by authorizing Purchaser to deduct said commission for purchase price, as aforesaid.

"In the event this purchase is not consummated, Purchaser shall not be required to pay said $3,000.00 or any part thereof to the said C. O. Crockett, Arch Price and D. E. Stimson.

"10. This contract is executed in duplicate this second day of November, A. D. 1933. (Signed: A. O. Phillips, Seller; Rancho Oil Company by D. W. Josey, Vice-President, Purchaser.)"

On November 15th Phillips wired Crockett that he was unable to procure settlement of the Rollins' claim referred to in paragraph 2 of the contract and that he was calling off the deal. As a consequence, the sale of the lease to Rancho Oil Company was not carried out. Said oil company is not a party to this suit and is making no complaint of failure to carry out the contract.

Plaintiffs sought recovery on two distinct theories. Under their first theory they alleged that Phillips and Lee were partners and that Phillips, acting for said partnership, or in the alternative for himself, listed the property in question with plaintiffs for sale at a net price of $57,000. There is no allegation in this connection, however, of any agreement either

express or implied to pay a brokers' commission in the event of such sale. They alleged that they brought about the written agreement between Phillips and Rancho Oil Company, as above set out; that "the services of plaintiffs as brokers and as agents for the parties to said contract, the said Price and Stimson representing the seller and the said Crockett representing the purchaser, were recognized, and their payment in the sum of Three Thousand Dollars for services in behalf of both parties, was expressly provided for in said contract;" that Phillips actually settled the Rollins' claim referred to in paragraph 2 of the contract on terms satisfactory to himself but afterwards refused to carry out the terms of the written contract and that as a consequence both Phillips and Lee, or at least Phillips, were liable to plaintiffs in the sum of $3,000. Under the second ground of recovery the plaintiffs alleged in the alternative that the defendants listed the land with them for sale and agreed to pay them a commission for finding a buyer for said property; that they found a purchaser for the property in the person of the Rancho Oil Company on terms stipulated by the defendants, but that the defendants refused to carry out said agreement and that thereby they became liable to plaintiffs in the sum of $3,000.

Upon the trial of the case only three issues were submitted to the jury, in answer to which the jury found, in substance, as follows: (1) That Lee did not authorize Phillips to sell the lease in question in accordance with the terms of the contract above set out; (2) that while Phillips was negotiating with plaintiffs for the sale of the land, Lee knew of such negotiations; (3) but Lee did not consent to nor approve the conduct of Phillips in such negotiations nor in the entering into of said contract.

■ Independent of the terms of the written contract, there was no substantial evidence to support plaintiffs' allegations that the defendants listed the lease with them for sale and either expressly or impliedly agreed to pay them a commission in the event they found a purchaser therefor. In addition, there were no findings by the jury to support such theory of recovery nor was there any request for the submission of any issues thereon. Since the plaintiffs failed to produce evidence and to secure finding of the jury support-

ing such theory of recovery, they must be presumed to have abandoned same. 41 Tex.Jur. 1240; Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.2d 1084.

■ If the plaintiffs were entitled to recover at all, it was by virtue of the terms of the written contract hereinabove set out. The jury on ample evidence found that Lee did not authorize nor approve the making of the contract as embodied in the written instrument, and hence he is not liable thereon. Appellants insist, however, that since Phillips signed the contract, he is personally liable thereon, and that appellants, as third party beneficiaries therein, are entitled to recover against him for his alleged negligent failure or refusal to perform the same. Appellants are not parties to the written contract. Whatever rights they had thereunder are such only as accrued to them as third party beneficiaries therein. One claiming to be a third party beneficiary under a contract alleged to have been made for his benefit cannot recover thereon merely because he will be incidentally benefited by its performance. He must be a party to the consideration or the contract must have been entered into for his benefit, 13 C.J. 709, sec. 817, and he must accept it as made and must succeed or fail upon its terms. 10 Tex.Jur. 485, sec. 281; 13 C.J. 712; Williston on Contracts, Vol. 2, p. 1061, sec. 364a; Page on Contracts, Vol. 4, p. 4217, sec. 2399; Western Union Telegraph Co. v. Douglass, 104 Tex. 66, 133 S.W. 877. A careful search of the contract reveals that it contains no direct obligation on the part of Phillips to pay appellants anything. In fact, we think the evidence concerning the circumstances under which the contract was executed, as well as the terms of the contract itself, disclose almost without dispute that appellants were not looking to either the seller or purchaser for a broker's commission in the strict sense, but were merely selling the lease for a profit over the net price demanded by the seller and were intending to retain for their own use the excess received by them from the purchaser. The contract merely authorized Rancho Oil Company to pay $3,000 out of the purchase price of the lease to appellants. The obligation on the part of the Rancho Oil Company to pay such $3,000 out of the purchase price was made expressly subject to the condition that Rancho Oil Company would not be liable therefor in the event the contract of sale was not

consummated, and since the contract was not consummated, clearly the Rancho Oil Company was not liable for the payment thereof. Crawford v. Woods, Tex.Civ. App., 185 S.W. 667. There being no provision in the contract obligating Phillips to appellants in any respect, except to permit the purchaser to pay a part of the purchase price to them in the event the sale was consummated, appellants could not recover from Phillips on account of his refusal to carry out his contract with Rancho Oil Company.

The judgment of the trial court is affirmed.