### T. L. MARSALIS v. J. C. PATTON.

#### No. 3240.

1. **Erroneous Charge if Harmless is no Ground for Reversal.**—A charge upon an immaterial issue and which is harmless is no ground for reversal. See example.

2. **Verdict—Failure to Find Upon all Issues.**— A verdict which omitted action upon one or more items pleaded and proved and submitted to the jury is not responsive to the issues submitted, and should therefore be set aside. See example.

APPEAL from Dallas. Tried below before Hon. R. E. BURKE.

The appellee J. C. Patton filed this suit in the District Court of Dallas County, November 26, 1889, against T. L. Marsalis, the appellant, for an alleged indebtedness of $7500. The grounds of his claim were as follows:

1. For services in superintending the erection of a stage in the Oak Cliff Park Pavilion, near Dallas.

2. For the alleged receipts of a summer opera company, engaged and managed by appellee in said pavilion, in June, 1889.

3. For the receipts of the same opera company under a second contract, at the same pavilion, during the summer of 1889.

Plaintiff J. C. Patton alleged, that defendant T. L. Marsalis was the owner of the Oak Cliff Pavilion and of a railway running from Dallas near to the pavilion operated for profit in transportation of passengers, and was the owner of a large amount of real estate in Oak Cliff cut up into lots for sale, and that he was anxious to sell the same; that he employed plaintiff about April 1, 1889, to devise a plan for a new stage in the pavilion, and to superintend and direct its construction. The petition sets out numerous items of work directed by him in changing the pavilion, the erection of the stage, etc., in performance of the agreement, for which defendant promised to pay plaintiff a reasonable value, and that the services were reasonably worth $1100.

It was also alleged, that defendant was desirous of securing a troupe to give theatrical entertainments in the pavilion to increase his passenger traffic over his road, and to be otherwise benefited, and engaged plaintiff to assist him in securing a troupe; that after much correspondence and trouble plaintiff located a suitable troupe in Little Rock, Arkansas, and he was then employed by defendant to go to Little Rock and secure the same for defendant, which he did with much difficulty; representing the defendant and in behalf of defendant he agreed with the company for eight weeks services at $900 per week, and to pay their railway fare to Dallas and return to Little Rock. The company signed the contract with the understanding that defendant should in all things affirm it and guarantee all the promises of plaintiff to the company; that he returned with the contract to Dallas and fully explained the same to him. Defendant had objections to becoming responsible for a specific amount to the company as a salary, and proposed to plaintiff that he (plaintiff) should take the contract, and that he (defendant) would furnish the pavilion free of charge, furnish lights and necessary help free of charge, and guarantee the company $900 per week for four weeks; that by telegram plaintiff employed the company under the last contract for four weeks; and that they came and carried out the same during the four weeks, an admission fee of 50 cents being charged for each performance for choice seats and 25 cents for other seats; that by agreement defendant received the proceeds of the entertainment, and has failed to account for the same; that he (defendant) received $1600 for each week, or $6400 for the four weeks, of which he paid $3600 salaries to the members of the company. This contract is alleged to be in writing and in possession of defendant, and he is notified to produce it on the trial. After the expiration of the four weeks, plaintiff, with defendant's consent, contracted with the troupe for six or eight weeks longer upon the same terms mentioned in the first contract, ex-

cept that plaintiff was bound to pay them $800 per week, guaranteed by one H. P. Park, defendant in all other respects contracting as before, that defendant received the proceeds of the entertainments given in the pavilion under the last engagement for three weeks; and refused to account for the same, at $2000 each week, in all $6000; of which he paid out as salaries $2400, leaving a balance of $3600 not accounted for, which he refuses to pay; that defendant constantly excluded plaintiff from a participation in the receipts of the entertainments, but that he always promised "to make everything all right." In reply to defendant's answer, he denies that he received $3175, as alleged by defendant; admits that he received $45 from defendant to bear his expenses to Little Rock when he went there for defendant, and that he gave his note for the amount, defendant saying at the time it was only a memorandum or receipt showing the disposition made of the amount; and plaintiff avers that all of the amount was used in his necessary expenses on the trip.    Plaintiff also admits that he gave his note to defendant for $300, upon the representations of defendant that there was a deficiency of that amount by plaintiff; that the expenses of the performances exceeded the receipts by that amount at the date of the note; all of which representations were then false, as defendant then knew, plaintiff having no personal knowledge of the facts.    Plaintiff also denied every item of defendant's account attached to his answer as exhibit A, except the item of salary paid to the company, and that most of them were incurred upon defendant's private account; that if defendant will pay his deadhead admission fees, plaintiff stands ready to do the same. Prayer for judgment for $7500, but if the court should hold that he (plaintiff) is not entitled to the proceeds of the business, then for the reasonable value of his services, which he lays at $7500.

Defendant answered by demurrer, general denial, and specially, that at the time of filing the suit plaintiff was indebted to defendant in the sum of $3175, paid out for plaintiff at his request; that the original agreement was that plaintiff should engage the troupe and run the theater upon his own responsibility, defendant to furnish the pavilion free, as well as lights and all necessary help, and that plaintiff should have all that was made over and above the expenses; that the expenses were to be paid before any money was to be paid to the troupe or to plaintiff; that plaintiff then said he would go to Little Rock and employ the troupe, but being without money he requested from defendant the loan of $45, which defendant let him have, taking his note for the same; that when plaintiff returned from Little Rock he informed defendant that he had engaged the troupe for eight weeks, upon condition that defendant would guarantee $900 as salaries per week.    Defendant refused to make the guaranty, but did agree to guarantee the $900 per week for four weeks only, with the understanding that he was to take out of the receipts all expenses incurred, and he was to have entire con-

trol of the receipts until all expenses were paid, the balance to be paid to the company; that by the 11th day of June, 1889, the time when the entertainments were to begin, he had advanced to plaintiff at his request for expenses $400; that the first week's receipts amounted to only $636.35; that he paid the $900 salaries as agreed and all expenses, at a loss of $600; that when the four weeks had expired, during which time he punctually paid the $900 per week, the expenses exceeded the receipts by $2400, shown by exhibit A filed; that at the expiration of the four weeks plaintiff engaged the company for another six weeks at $800 a week guaranteed, with one Parks as guarantor, all at the company's request; and the understanding being that the receipts should be paid to defendant, with which plaintiff should have nothing to do, and that all expenses should be first paid out of the receipts. The plaintiff continued the performances three weeks, falling short every week, failing to realize the amount guaranteed the company; and for the first week he and Parks executed their note to defendant for $300 for the shortage, cashed by defendant and paid to the opera company; that during the remaining two weeks there was a shortage which amounted to $800, paid by defendant at plaintiff's request, all of which transactions are shown in exhibit A; that in all defendant paid for plaintiff between May, 1889, and July 27, $3475, no part of which has been refunded, except by the note of $300, which is still unpaid. Defendant prays for judgment for the $3475. Defendant then sets up the note of plaintiff to him for $45; also a note of plaintiff to the Dallas Land and Loan Company for $40, now owned by defendant, for which he also asks judgment against plaintiff. There is no assignment of error making a contest on the facts, and it is not necessary to outline them further than as suggested in the foregoing issues presented in the pleadings, to which the evidence applied. There was a verdict for plaintiff for $386.28, and judgment accordingly, from which defendant has appealed.

[This statement accompanied the opinion.]

*Leake, Shepard & Miller*, for appellant.

*Kearby & McCoy*, for appellee.

COLLARD, Judge, *Section A.*—The first assignment of error is as follows: "The court erred in the charge to the jury, as follows: 'With respect to the contract between plaintiff and the McCollin Opera Company, referred to herein, you are further told, that the legal construction of this contract would give plaintiff the right to collect all gate receipts under it; and proof being shown by both parties that defendant collected the gate receipts, the burden is on the defendant to show that he collected the same with the consent and approval of the plaintiff;' because it misled the jury, and virtually charged them that de-

fendant was bound by the contract between plaintiff and the McCollin Opera Company, when in truth and in fact the reconvention of the defendant was based upon a contract made between him and plaintiff."

We do not see how this charge, if it is conceded to be incorrect, can affect any contested issue in the case. The real questions in the case were: Did the defendant make proper application of the receipts? Did he pay expenses and debts with them under the contract with plaintiff? Has he properly accounted to plaintiff for them? It is admitted that he received all the gate money—the charge asserts this; and it is not objected that there was error in so doing. The vital issue was, For what amount of these receipts was he liable under the agreement and the facts? The rights of the parties, so far as we can see, did not depend upon whether defendant had plaintiff's consent to take the gate money or not. The charge was wholly immaterial and harmless. The court in the beginning instructed the jury that the burden of proof was upon the plaintiff to establish his cause as alleged, and upon defendant to show his right to recover over against plaintiff. The issues were then submitted on both sides, and a verdict awarded to plaintiff for $386.28.

Appellant complains of the verdict, because it is not responsive to the issues and is contrary to the law as charged by the court, because the court expressly charged them to find with respect to the three counts in plaintiff's petition and the notes set up in reconvention by defendant, and to deduct the amount due on the same from the general finding. The verdict is as follows: "We, the jury in the case before us, to-wit, J. C. Patton v. T. L. Marsalis, find on the first count, that for services rendered the defendant by plaintiff, defendant is indebted to said plaintiff in the sum of $386.28, including interest; on the second count we find plaintiff due defendant $500, including interest; on the third count we find defendant due plaintiff $500, including interest; leaving balance due plaintiff, $386.28."

The court submitted instructions on each of the three counts in the petition and the defenses thereto, as well as upon the affirmative relief asked by defendant, and then as follows: "The plaintiff's notes set out by defendant in his plea being admitted by the plaintiff in his evidence, a recovery for the amount of the same according to their face should be had by the defendant. It is for you to say under this charge from the evidence before you what amount, if any, is due the plaintiff. Let your verdict show each of these separately; then by deducting one from the other let your verdict show in whose favor the difference preponderates." The notes referred to in the court's charge were one of May 23, 1889, for $45, and one July 1, 1889, the latter executed to the Dallas Land and Loan Company. We are inclined to think that neither of these notes was considered by the jury in making up their verdict. It would seem from its terms that it only embraced the three

counts in the petition, the defenses thereto, and the affirmative matter set up by defendant on his version of the contract. At least we can not be positive that the amount due on the notes was deducted from the amount found to be due plaintiff. The verdict was not responsive to the issues submitted, and can not stand. We do not mean to say that the court's direction to the jury to find the amount due on the notes (both notes) in favor of defendant is correct. Defenses were made to the note for $45 by plaintiff in his replication and testimony. The question has not been discussed by counsel, nor was it submitted to the jury. It is still open.

We conclude, that because the verdict was not responsive and certain, defendant's motion for a new trial on that ground should have been sustained, and that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*