### GREENE et al. v. WAGGONER REFINING CO. et al. (No. 11261.)

(Court of Civil Appeals of Texas. Fort Worth. Oct. 24, 1925.)

**1. Appeal and error ⬤⟾1010(1)—Findings sustained on appeal, if supported by competent evidence.**

Finding of court will be sustained on appeal, if there is competent evidence legally and reasonably susceptible of weight and construction given it by trial court or jury, regardless of evidence of a contrary tendency and effect.

**2. Contracts ⬤⟾32—Execution of written contract necessary, where it is understood that oral agreement should be reduced to writing.**

Where contracting parties expressly or impliedly agree that an oral agreement shall be reduced to writing before contract becomes final, the execution of written contract is necessary to give validity to agreement.

**3. Brokers ⬤⟾86(3)—Evidence held to support finding of agreement to reduce contract to writing, and that terms of contract had not been fully agreed upon.**

In broker's suit for commissions, evidence *held* to support finding that contract was to be reduced to writing before it became binding, and that terms of contract had not been so far agreed upon or executed as to render agreement to reduce it to writing immaterial; the deliveries made being "spot sales" for accommodation.

---

⬤⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Contracts ⪪15—Minds of parties must meet on all material particulars.**

To constitute an enforceable contract, minds of contracting parties must meet on all material particulars.

**5. Evidence ⪪151(2)—Testimony of parties' intent to reduce contract to writing held competent.**

In broker's suit for commissions, testimony of defendant's agent that he did not intend to close contract for sale of oil without putting it into writing was competent.

**6. Appeal and error ⪪931(6) — Presumption that in trial by court findings are based on competent evidence only.**

In trial before court without jury, it is presumed that court bases findings on competent evidence only.

**7. Sales ⪪22(2)—Offers could be withdrawn before acceptance.**

Where oral and written negotiations amounted to mere offers on part of seller which were not accepted, seller had right to withdraw offers at any time before acceptance.

**8. Brokers ⪪52—Broker not entitled to commissions, in absence of enforceable contract.**

A broker is not entitled to commissions, in absence of enforceable contract between seller and buyer.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by L. A. Greene and another against the Waggoner Refining Company and others. Judgment for defendant named, and plaintiffs appeal. Affirmed.

Bryan, Stone, Wade & Agerton, of Fort Worth, for appellants.

Arthur Collins, F. B. Walker, and Thompson, Barwise & Wharton, all of Fort Worth, for appellee.

CONNER, C. J. This suit was instituted by appellant L. A. Greene and James K. Helmar, a partnership doing business as brokers, to recover from the Waggoner Refining Company commissions in the sum of $3,250. The plaintiffs alleged that at the instance of the defendants they secured an enforceable contract on the part of the Clayton Oil & Refining Company at Dallas, Tex., to purchase from defendant, upon terms and prices specified, 180,000 barrels of Electra crude oil. From a judgment in favor of the defendant, the plaintiffs have appealed, and the case is before us on the trial court's conclusions of fact and law and the briefs in behalf of the opposing parties.

It is undisputed that a Mr. Kolp, an authorized agent of the Waggoner Refining Company, Mr. Hickman, representing the Clayton Oil & Refining Company, and Mr. Greene, of the plaintiff firm, met in Wichita Falls, Tex., on the 9th day of August, 1922, and entered into negotiations for the purchase and sale of the oil in question, and beginning the next day the defendants delivered to a pipe line company for transportation and delivery to the Clayton Oil & Refining Company at Dallas, Tex., several thousand barrels of Electra crude oil at the price that had been agreed upon for the 180,000 barrels in contemplation, and so continued to deliver until September 22, 1922, oil aggregating 50,000 barrels. On or about September 23, 1922, the Waggoner Refining Company declared their negotiations at an end, and refused to make further deliveries, paying plaintiffs, however, the stipulated commission per barrel on the 50,000 barrels so delivered to the Clayton Oil & Refining Company, for which plaintiffs credit their contract for commission of 2½ cents per barrel for which they should procure a purchaser.

That defendant contracted to pay plaintiffs 2½ cents per barrel for each barrel of oil that they as brokers should, upon terms satisfactory to defendant, find a purchaser is undisputed, but the two vital issues of fact presented in the pleadings and evidence of the parties was: (1) Whether, as defendant insists and plaintiffs deny, it was understood and agreed during the negotiations at Wichita Falls on August 9, 1922, that the contract for the 180,000 barrels of oil should be reduced to writing and executed before it became effective and binding; and (2) whether, at the meeting of August 9th, as insisted by plaintiffs and denied by defendant, the terms of the contract for 180,000 barrels of oil had been so far agreed upon during the negotiations, and so far executed by defendant, as to render the agreement, if any, to have the contract reduced to writing wholly immaterial. These several issues of fact were all found by the trial court in favor of the defendant the Waggoner Refining Company.

[1] Appellants assign error to the court's findings of fact as unsupported by the evidence. If there is competent evidence legally and reasonably susceptible of the weight, construction, and effect given it by the trial court or jury, then the finding of the court or jury, as the case may be, must be sustained on appeal, regardless of evidence of a contrary tendency and effect. Our Supreme Court, in passing upon the sufficiency of the evidence to sustain material findings of a jury, thus expressed the rule:

"We must reject all evidence favorable to the plaintiffs in error, and consider only the facts and circumstances which tend to sustain the verdict, and if the jury, in an honest and impartial effort to arrive at the truth, might have reached the conclusion embodied in this verdict, this court cannot set it aside. In considering this question, we must take into account all of the facts and circumstances attending the transaction." Cartwright v. Canode, 106 Tex. 507, 171 S. W. 698.

See, also, Farmers' & Merchants' Gin Co. v. Simmons (Tex. Civ. App.) 178 S. W. 621.

The rule is substantially the same in determining the sufficiency of the evidence to sustain the conclusions of fact found by the court under the statute. Sanborn et al. v. Gunter & Munson, 84 Tex. 273, 17 S. W. 117, 20 S. W. 72; Ramirez v. Smith (Tex. Civ. App.) 56 S. W. 254; David v. Roe (Tex. Civ. App.) 271 S. W. 196.

[2] The facts being found, there can be but little trouble in determining the law of the case. Contracting parties negotiating, who understand and agree, expressly or impliedly, that an oral agreement shall be reduced to writing before the contract becomes final, are bound by such agreement or understanding, and an execution of the written contract is necessary to give validity and right of enforcement to the agreement. Thus it is said in Ruling Case Law, vol. 6, p. 618, par. 39:

"Where contracting parties agree to reduce their contract to writing, the question whether their negotiations constitute a personal contract usually depends upon their intention, or, as it is sometimes expressed, upon whether they intend the writing to be a condition precedent to the taking effect of the contract."

The authority above cited was approved and applied by this court in the case of Prince v. Blisard (Tex. Civ. App.) 210 S. W. 301, in which was said:

"If plaintiff understood and intended, as indicated by his testimony, that a written instrument was necessary in order for the oral negotiations between the parties to ripen into a valid and binding contract for the lease of the farm, then it is clear that no binding contract whatever was ever made between the parties."

See, also, International Harvester Co. v. Campbell, 43 Tex. Civ. App. 421, 96 S. W. 93, by the San Antonio Court of Civil Appeals, and Walker Grain Co. v. Denison Mill & Grain Co., 178 S. W. 555, by this court.

[3] We will not undertake to quote the testimony at large, but have endeavored to carefully examine it and the briefs of counsel, and have concluded that we are unable to set aside the findings of the court above set out. In a general way, and in substance, it may be stated that the evidence shows that Mr. Hickman and Mr. Ricker, representatives of the Clayton Oil & Refining Company, Mr. Greene, one of the plaintiff firm, and Mr. Kolp, an authorized agent of the Waggoner Refining Company, all met in Wichita Falls, Tex., on the 9th or 10th day of August, 1922, and negotiations were entered into looking to the purchase and sale of oil. Mr. Greene testified:

"It was pretty well understood among all four of us, the general terms and everything of the proposition."

The evidence, however, leaves it pretty clear that the method of payments to be made for oil delivered was not then agreed upon, nor does the evidence disclose that at that meeting an agreement was had as to the grade of oil, as to which party should bear the loss of the 1 per cent. discount of oil charged by the pipe line company for transportation, nor whether the oil should be untreated oil at the point of delivery. Mr. Kolp's proposition for payment required an advance deposit in a Wichita Falls bank of each five-day delivery, which was to be 1,000 barrels per day. This Mr. Hickman, who alone can be said to have any authority to act for his company, would not assume authority to agree to, and Mr. Kolp went from the meeting to the telegraph office, and sent a telegram to Mr. Clayton, the president of the Clayton Oil & Refining Company, embodying his proposition. This telegram Mr. Clayton failed to answer. Mr. Kolp also left the meeting referred to with the statement that he would go to his lawyer and have the contract drawn in writing. All parties present seemed to understand that this was to be done, but Mr. Greene testified that the written contract was to constitute a mere memorandum of this contract. Mr. Kolp's testimony, however, authorized the conclusion that the contract was not to become effective until written and executed by Mr. Clayton, president of the Clayton Oil & Refining Company, and in this Mr. Kolp seems to be corroborated by circumstances hereinafter noted. He testified that such was his custom in cases where it involved time deliveries of large quantities. While there was evidence tending to show that Mr. Hickman would have been authorized to conclude the contract, nevertheless there was testimony to the effect that he expressly declined to do so. At this meeting it was agreed that Mr. Kolp, for his company, should at once proceed to make deliveries under the contract. Mr. Kolp testified that these deliveries, in advance of the execution of the written contract, were a matter of accommodation merely; Mr. Hickman stating that his company was in immediate need of oil. The oil thus forwarded and delivered Mr. Kolp termed as "spot" sales, and made upon the same terms as other spot sales. That in such cases payment for oil at the price agreed upon was by draft on the purchaser attached to certificates of the pipe line company authorizing delivery of oil to the purchaser. After the meeting referred to at Wichita Falls, it seems that further negotiations were had between Mr. Kolp, representing his company, and Mr. Clayton. When the written contract first drafted by Mr. Klop was received at the Dallas office of the Clayton Oil & Refining Company, it was referred to Mr. Clayton. The contract as thus drafted was not accepted by him, but, through correspondence extending from soon after the Wichtia Falls meeting until about the 23d day of September, 1922, Mr. Clayton requested changes, such as a different arrangement as to payments; that

the contract should require the delivery by the defendant of "untreated" crude oil; that the contract should require the delivery of "net" barrels of oil, thus throwing on the defendant company the loss of a deduction of 1 per cent. discount charged by the pipe line company for transportation. On September 9th Mr. Kolp wrote Mr. Clayton as follows:

"We are unable to make the changes in this contract that you have requested us to make, and if the contract in its present form is not satisfactory we do not feel justified in making it bind us to deliver fresh untreated oil, nor could we agree to deliver you oil of a certain gravity.
"If the contract as drawn and inclosed herewith is acceptable, please execute and return promptly to us."

In answer to this letter, H. H. Dugan, of Shreveport, on September 14th, wrote:

"Mr. Clayton is out of the city, and will be for several days, but this matter will receive prompt attention when he returns."

Again, on September 23d, Mr. Kolp wired Mr. Clayton about the contract; in response to which Mr. Dugan wired Mr. Kolp that Mr. Clayton was still absent. Whereupon Mr. Kolp then wired:

"Our contract submitted to you some time ago, covering one thousand barrels Electra crude per day over a period of six months still unsigned and not accepted. We cannot wait on you any longer. We consider that we have no contract with you."

One or more days after which Mr. Dugan, for Mr. Clayton, signed the contract and forwarded it to Mr. Kolp, who thereafter refused to make further deliveries. As further tending to show that at the time of the negotiations in Wichita Falls it was understood that the contract should be in writing in order to become finally effective, Mr. Clayton testified that Mr. Hickman was "assistant secretary and treasurer and assistant manager, with authority to negotiate contract, but not to finally close them out; that he was the only one authorized to sign contracts for the company involving a deal of the magnitude of the purchase of the amount of oil to the extent of 180,000 barrels."

There was testimony doubtless tending to contrary conclusions, such as, for instance, soon after the negotiations at Wichita Falls, Mr. Kolp sent to the Dallas office of the Clayton Oil & Refining Company a paper designated as "a confirmation of sale," containing terms susceptible of the construction that the contemplated sale of 180,000 barrels had been concluded. But this was explained by Mr. Kolp as intended to apply to the sale of the advance deliveries of oil hereinbefore mentioned, which, under the terms of the understanding in the oral negotiations, were to be applied on the contract for the sale of the 180,000 barrels when the contract was completed.

There is perhaps other testimony to which reference should be made, but we think the outline given sufficient to justify the conclusion we have reached that the evidence as a whole supports the trial court's findings of fact, which we accordingly adopt.

Appellants' contention that the defendant's contract for the sale of the 180,000 barrels of oil was enforceable, notwithstanding the failure of. the Clayton Oil & Refining Company to seasonably execute the written contract on the ground that the oral agreement comprehended all material terms and had been partly executed, must fail for the reason that the trial court found, upon sufficient competent evidence, as we think, that all material terms of the contract were not agreed upon in the oral negotiations, and that the deliveries as made and paid for were merely "spot sales" for accommodation, with the understanding that all oil so sold was to be credited on the contract for 180,000 barrels when the same was executed.

[4] It is undoubtedly true, as a matter of law, that to constitute an enforceable contract the minds of the contracting parties must meet upon all material particulars. As this court said in the case of Walker Grain Co. v. Denison Mill & Grain Co., 178 S. W. 555:

"To become a completed contract, as has been often said, the minds of the parties must meet upon the same thing. The acceptance must correspond to the offer at every point, leaving nothing open for future negotiations. An attempted acceptance which seeks to modify one or more terms of the offer is of no legal effect as an acceptance. It is really a rejection of an offer and a proposition in lieu of the original offer, and must be accepted by the party making the original offer in order to constitute an original agreement. Bank v. Hall, 101 U. S. 43, 25 L. Ed. 882 [822]. So, too, it is well settled that if, at the time of the verbal negotiations, it is agreed that such negotiations shall be tentative only, and that the terms are not to become effective, until after they have been reduced to writing and accepted by the parties, then the verbal agreement is no contract, in a legal sense, until the writings have been executed."

[5, 6] Several assignments of error are directed to the introduction of evidence; special emphasis being given to the testimony of Mr. Kolp to the effect that it was not his intent and purpose to close the transaction at Wichita Falls without the matter being put into a written contract, and that he would not have entered into a transaction to sell and deliver 180,000 barrels of oil covering a six-month period of time without such a contract. Where the trial is before the court without a jury, it will be presumed, unless the contrary appears, that the court bases his findings upon competent evidence only, but, should we assume that the court gave credence and weight to such expressions of Mr.

Kolp as to his intent and purpose, we do not think the judgment should be reversed on the ground of its incompetence. The Austin Court of Civil Appeals, in the case of Dean v. Dean, 214 S. W. 505, says:

"The intent with which a party does an act is a fact known to him, and he is a competent witness to testify as to such fact."

The Amarillo Court of Civil Appeals, in the case of Dove v. Coleman, 234 S. W. 918, says:

"The general rule is that, when the motive or intent or belief of any person is a material fact, direct testimony as to such motive, intent, or belief is competent, and a further fundamental rule of evidence is that a party may testify as to matters explanatory of facts in evidence, or of inferences therefrom. Pecos & North Texas Railway Co. v. Wrinkler [Tex. Civ. App.] 179 S. W. 691 (16); Dean v. Dean [Tex. Civ. App.] 214 S. W. 505; Emerson-Brantingham Implement Co. v. Roquemore [Tex. Civ. App.] 214 S. W. 679; Thigpen v. Russell, 55 Tex. Civ. App. 211, 118 S. W. 1080; Wade v. Odle, 21 Tex. Civ. App. 656, 54 S. W. 786; Memphis Cotton Oil Co. v. Goode [Tex. Civ. App.] 171 S. W. 285."

[7] Besides, Kolp's acts, the extended correspondence, and the subject-matter of the negotiations, all tend to show that it was the intent and purpose of Kolp to have the contract reduced to writing and executed before final acceptance on his part. Moreover, an error, if any, relating to this issue in the case would not require a reversal, for the reason that the court below has found, which finding we sustain as hereinbefore pointed out, that the minds of the parties did not meet in the oral negotiations or in the written correspondence. Indeed, it would seem that the negotiations, both oral and written, amounted to no more than offers on the part of the defendant company, which were not accepted prior to the time of their withdrawal. The defendant, therefore, had the right, as we understand the law, to withdraw such offers at any time prior to their acceptance. See Walker Grain Co. v. Denison Mill & Grain Co., supra.

[8] It thus appearing that there was no final enforceable contract between the defendant and the Clayton Oil & Refining Company for the sale of 180,000 barrels of oil, as plaintiffs alleged, they are not in a position to claim the commissions for which they sue. In the case of Jackson v. Biggerstaff (Tex. Civ. App.) 168 S. W. 42, it is stated:

"The rule is that before the broker can recover the purchaser must be willing to buy, or, if unwilling, there must be a contract of purchase which is enforceable."

See Crawford v. Woods (Tex. Civ. App.) 185 S. W. 667; English v. Realty Co., 55 Tex. Civ. App. 137, 117 S. W. 996.

The converse of the rule must be true that the seller must be shown to have agreed upon and consented to sell upon terms offered by the purchaser.

Without further discussion, we conclude that the trial court's findings of fact and conclusions of law should be adopted by us and the judgment affirmed.