**BRAMMER & WILDER et al. v. LIMESTONE COUNTY et al.   (No. 802.)**

Court of Civil Appeals of Texas.  Waco.  Dec. 5, 1929.

Rehearing Denied Jan. 23, 1930.

Dodson & Ezell, of San Antonio, A. M. Blackmon, of Groesbeck, Seay, Seay, Malone & Lipscomb, of Dallas, and Richard & A. P. Mays, of Corsicana, for appellants.

J. E. & B. L. Bradley and Mr. & Mrs. C. S. Bradley, all of Groesbeck, and C. H. Machen, of Mexia, for appellees.

BARCUS, J. In the summer of 1925, appellee, Limestone County, hereinafter designated county, entered into a contract with appellants Brammer & Wilder, hereinafter called contractors, under the terms of which the contractors were to build about 18 miles of macadamized roads. The United States Fidelity & Guaranty Company, hereinafter called surety company, signed said contractors' bond, under the terms of which it guaranteed that the contractors would build said road in accordance with the plans and specifications. On December 29, 1926, the eighteenth estimate, as a basis for partial payment, was presented to the commissioners' court of the county, and same was approved, allowed, and paid. On December 30, 1926, the engineer wrote a letter to the county and the surety company, stating that the roads had been completed and accepted and finally paid for, and that the surety company was discharged. On January 18, 1927, the final estimate asked for by the contractors, in the sum of $9,481, was by the commissioners' court of the county refused. On January 24, 1927, this suit was filed by the county to recover from the contractors and the surety company damages which it claimed it suffered by reason of the roads not having been built according to the plans and specifications.

The specifications under which the roads were to be built called for the building of seven different pieces of roads, and embrace 80 pages in the statement of facts, going into the minutest detail as to the method, man-

ner, and material to be used in the construction of said roads. The county employed Horace Boyett, an engineer, to superintend and supervise the building of said roads. The contract made between the county and the contractors provides specifically that said engineer shall act as referee in all questions arising under the contract between the parties, and his decision shall be final and binding upon all parties. It provides that the engineer has the right to make such alterations in the plans or in the character of the work as he considered necessary or desirable, provided the alterations did not change materially the original plans and specifications.

The county's pleadings are very voluminous, covering some 75 pages. It alleged that a conspiracy to defraud the county existed between the contractors, the county engineer, and Mr. Kennedy, the county commissioner in whose precinct the roads were being constructed; that by reason thereof the contractors failed to construct the roads according to the plans and specifications; that the engineer made false and fraudulent reports and estimates to the commissioners' court; and that Mr. Kennedy, the county commissioner in the precinct where the roads were being built, without knowledge on the part of the other members of the commissioners' court, entered into said conspiracy, and that, as a result of the conspiracy as existing between said parties, the various estimates as made by the engineer were allowed and paid by the commissioners' court. The county further alleged that its engineer, Mr. Boyett, was incompetent and dishonest, and that, in making the estimates as the work progressed and in performing the service as engineer, he acted dishonestly and fraudulently. The county alleged in detail some 34 separate and different acts which it claimed the contractors had failed and neglected to do in the construction of said roads, as required by the plans and specifications. The county further alleged that it had paid to the contractors certain sums of money for extra work, which it alleged the contractors had not earned and were not entitled to, and listed said items, being 11 in number and aggregating $78,814.56. The county further alleged that, if the 17.94 miles of road had been constructed according to the specifications, same would have been worth $352,881.11; that "by reason of the failure and neglect of the contractors to comply with the terms of the contract as herein alleged," the roads as constructed by the contractors were not worth more than $161,705.37, and that the county had thereby been damaged in the sum of $191,174.74, being the amount it had paid the contractors over and above what the county alleged the roads as built were worth. The county further alleged that it had paid certain parties, naming them, for policing the roads while they were being built, the sum of $2,409, which it alleged

should have been paid by the contractors. The county further alleged that it was entitled to 6 per cent. interest on all sums of money from the date the wrongs, injuries, and delinquencies occurred. It asked for judgment for its debts, reimbursements, advances, damages, interest, and general and special relief.

The county by a trial amendment alleged that the various estimates made by the county engineer, which were approved by the county auditor, as well as the acceptance of the roads and the various orders made in reference thereto, were made and approved by the commissioners' court as a result of a custom that had existed for years in the commissioners' court of Limestone county, under which all work being done in a commissioner's precinct was approved by the commissioners' court, unless the commissioner from the precinct where the work was being done made some protest. The county alleged that the commissioner Kennedy, in whose precinct the roads in controversy were being built, was in conspiracy with the contractors and the engineer, and for said reason entered no protest against the allowance of the various estimates and orders made relative to the construction of said roads.

The contractors urged a large number of special exceptions to the pleadings of the county. They further specially excepted to the portion of the county's pleadings which attempted to plead a custom existing in the commissioners' court, under which said court, without any investigation, approved the bills for work performed on the roads, because the commissioner in said precinct made no complaint with reference thereto. The contractors further specially pleaded that all the work done on the roads had been under the direct supervision and control of the county engineer, and that all the changes that had been made in the construction thereof were at the instance, request, and under the direction of said engineer, and that under the terms of the contract all parties were bound by the acts of said engineer. They further specially pleaded that on October 5, 1926, the commissioners' court had by an order accepted three of the seven roads embraced in the contract, having a total of 7.78 miles, and that the county was thereby estopped from claiming any damages with reference thereto.

The surety company adopted all the pleadings of the contractors, and in addition alleged that it was relieved from all liability by reason of the fact that there had been a number of material changes, which it named, made in the plans and specifications after it had signed and executed the bond; and, further, that it was relieved because the county had failed and refused to retain the ten per cent. on each estimate, as required under the contract.

The cause was submitted to a jury on nine special issues. After giving a number of other special instructions, the court, by paragraph 8, stated: "In determining and answering the special issues herein, you will not consider as a material change or departure from the terms and provisions of the contract, any departures or changes, if any, made by order of the commissioners court."

Said special issues submitted and the answers of the jury thereto were as follows:

"(1) Do you find that Bramer & Wilder and their employees departed materially from the terms and provisions of the contract in evidence and failed to perform said contract for the construction of said roads in substantial compliance with its terms and provisions? Answer: Yes.

"(2) Find and answer whether such roads as constructed were of substantially inferior quality and utility and less serviceable value than they would have been if constructed in substantial compliance with the terms and provisions of said contract, if they were not so constructed. Answer: Yes.

"(3) Find and answer what amount of money if any, it would have required, at the time said roads were turned over to plaintiffs, to have reconstructed or repaired them so as to have been of substantially the same quality, utility and serviceable value as they would have been if constructed in substantial compliance with the terms and provisions of said contract and specifications, if they were not so constructed. Answer: $105,719.40.

"(4) Do you find that at the time such roads were turned over to plaintiffs there were any material defects in them requiring mending or patching to make them comply with the terms and provisions of said contract and specifications? Answer: Yes.

"(5) Find and answer what amount of money, if any, it would have required at the time the roads were turned over to plaintiffs to have mended or patched them so as to make them comply substantially with the terms and provisions of the contract and specifications, if they were not so constructed? Answer: $105,719.40.

"(6) Do you find from the evidence that Horace Boyett and John Kennedy conspired with each other or that they or either of them conspired with J. L. Bramer and H. S. Wilder, or either of them, to procure the approval by the commissioners court of the several estimates, or either of them, for material furnished, labor performed and services rendered by Bramer & Wilder in building the roads in question, knowing at the same time, if they did, that said Bramer & Wilder had not constructed said roads or furnished said material and rendered said work and labor for which said estimates were rendered in substantial compliance with the contract and specifications in evidence, if such roads were not so constructed? Answer: Yes.

"(7) Do you find from the evidence before you that the allowance and approval of the several estimates of Bramer & Wilder, rendered for material, services, and labor furnished and performed in construction of the roads involved in this suit, was induced and procured by reason and on account of a custom, if such custom then existed, in effect, that any account presented to the commissioners court for labor or material done or furnished in any commissioner's precinct would be paid without investigation unless objected to by the commissioner of such precinct? Answer: Yes.

"(8) Do you find from the evidence before you that the allowance, approval and payment of the several sums paid by plaintiffs to persons for guarding or policing the Comanche or 'Nigger Creek' road was induced and procured by reason and on account of a custom then existing, in effect, that any account presented to the commissioners court for labor or material done or furnished in any commissioner's precinct would be paid without investigation unless objected to by the commissioner of said precinct? Answer: Yes.

"(9) Do you find that plaintiffs should recover interest upon such sums, if any, as they may be entitled to recover herein? Answer: No."

The record shows that the contractors were engaged in the construction of the roads in controversy about 16 months. The plans and specifications provided that at least once each month an estimate should be made by the county engineer of the amount of material furnished and work done, and that the county would pay 90 per cent. of each estimate, retaining 10 per cent. until the work was finally completed. During the construction of the roads 18 different estimates were made by the county engineer, approved by the county auditor, and allowed and paid by the commissioners'. court. The last of said 18 estimates was made on December 29, 1926, and was for $36,078.81. It stated that the total amount for the construction of the roads was $472,077.75, that the county had already paid $435,908.44, leaving due under the contract $36.078.71, the amount of said estimate. No retention of the 10 per cent. was provided for in said estimate. This estimate was on said date allowed and paid by the commissioners' court. It appears that the county, the contractors, and the engineer understood that said estimate was the final estimate for the construction of said roads, and that the only thing left to be determined was a claim of the contractors for about $9,481, which the engineer had not allowed and which was not embraced in said estimate. On December 30, 1926, the engineer notified the county and the

surety company that the contractors had completed the roads, and that he had accepted same, and that the final payment had been paid, and that the bondsmen were discharged from further liability. The engineer refused to approve the claim of the contractors for the $9,481 item, and on January 16, 1927, the commissioners' court refused to pay same. During the construction of the roads a large number of changes were made in the specifications. One mile of the road embraced in the original contract was by agreement between the county and the contractors eliminated. Some of the road was widened to 17 feet in width, and the thickness of the concrete was changed. The county employed the men to police the roads. It authorized the rock to be hauled instead of shipped by train. There was testimony indicating that a number of other changes were ratified by the commissioners' court when same were reported to them by the engineer. The engineer testified at great length and in detail about certain changes that were made in the method of construction of the roads. The increased cost from the original contract was more than $100,000. The testimony is voluminous, covering some 2,200 pages. The only testimony with reference to what it would cost to reconstruct the roads was by the engineer, Mr. Witt, who went into the matter at great length and stated that it would cost $276,000 to reconstruct the roads and build them in substantial compliance with the plans and specifications, using what could be salvaged out of the material and work that had been done by the former contractors. After the roads were built by the contractors, a large number of holes were dug therein in order to make a test to ascertain whether they had been constructed in accordance with the plans and specifications. The engineers who had been employed by the county to make this inspection testified that to repair or mend or patch said roads would cost between $8,000 and $9,000. This was the highest estimate made by any of the witnesses on the cost of repairing or patching or mending said roads.

Appellants, by several assignments of error and propositions thereunder, contend that the court was in error in refusing to permit the appellant Wilder to testify that he did not enter into, neither did he agree to enter into, any fraudulent scheme with either Boyett or Kennedy to defraud the county. They also complain of the trial court's refusal to permit the engineer Boyett to testify that he did not enter into any agreement with either the contractors or with Kennedy for the purpose of favoring the contractors. They also complain of the refusal of the trial court to permit the witness Kennedy to testify that he did not enter into any agreement with the contractors or the engineer to defraud the county. We sustain these assignments. Where parties are charged, as in this case,

with having intentionally and fraudulently entered into a conspiracy, and are charged with having done certain acts in furtherance thereof, said parties should be permitted to testify categorically, denying having entered into any fraudulent agreement. The weight to be given to said testimony of course is a matter for the jury. The rule seems to be settled that the intention of a party may be proved by his own statements. Wade v. Odle, 21 Tex. Civ. App. 656, 54 S. W. 786 (error refused); Greene v. Waggoner Ref. Co. (Tex. Civ. App.) 278 S. W. 492; Dean v. Dean (Tex. Civ. App.) 214 S. W. 505; Dove v. Coleman (Tex. Civ. App.) 234 S. W. 917.

Appellants contend that the trial court should have set aside the verdict and findings of the jury, because it appears from the statements of the jurors at the time the verdict was returned into court, and before same was accepted and filed and the jury discharged, that the jury had embraced in said verdict items not authorized by the charge of the court. We sustain these assignments. In determining their verdict the jury is required to accept the law from the court, and it is not authorized to consider any items other than those embraced in the court's charge in arriving at its verdict. In its pleadings appellee sought to recover $2,409 it had paid for policing the roads during their construction, and sought to recover $78,814.56 it claimed it had paid for extra work that was not due under the contract, and $161,705.37 it claimed it would cost to reconstruct or repair the roads to make them comply with the plans and specifications. The court only submitted to the jury the questions as to the cost of reconstructing, repairing, mending, or patching the roads, as embraced in issues 3 and 5, each of which the jury answered "$105,719.40." By question 9 the court asked the jury whether appellee should recover interest upon such sums as the jury found appellee was entitled to recover. When the jury returned its verdict, and before same was accepted by the court, they were polled on each separate issue, and they stated to the court that they had embraced in the amount they found for appellee under issues 3 and 5 the money paid by the county for policing the roads, and that they had figured the amount of interest which they thought appellee was entitled to recover, and had embraced same in said amount. They further stated that they had answered special issue No. 9 "No," because they had figured said interest themselves and had added it to the amount of their verdict. Neither of said items was authorized by the court's charge to be embraced in the amount of appellee's recovery. There is no way to determine from the record the amount of interest that the jury included in their findings. They did not state the rate of interest, or the method by which they had determined same, or the amount of interest

they had included in said findings. The right to a trial by jury is guaranteed by our Constitution, and, when the jury refused to be governed by the charge of the court, it is in effect a denial of this constitutional right. Collins v. Kay, 69 Tex. 365, 6 S. W. 313; Marsalis v. Patton, 83 Tex. 521, 18 S. W. 1070; Payne v. Smith (Tex. Civ. App.) 266 S. W. 441; St. Louis Southwestern Ry. Co. v. Dodson (Tex. Civ. App.) 285 S. W. 330; International-Great Northern Ry. Co. v. Cooper (Tex. Com. App.) 1 S.W.(2d) 578.

Appellants contend that special issue No. 1 submitted a mixed question of law and fact, in that it asked the jury to determine whether the contractors had departed materially from the provisions of the contract and had failed to construct the roads in substantial compliance with the contract; and, further, that said issue is multifarious and in the nature of a general charge. These propositions are sustained. The issue in effect asked the jury to determine the provisions of the plans and specifications contained in the 80 or more pages thereof, and then required them to determine whether the contractors had departed materially from any of said terms, and, read in the light of the special instruction No. 8, the jury were required by said issue No. 1 to determine whether those changes were material, and if so, whether they had been authorized by the commissioners' court. It was the duty of the court to construe the contract. The province of the jury was to determine which one, if any, of the 34 or more specific changes pleaded, and in support of which proof had been offered, had been made, and whether they had been authorized. Under the undisputed facts there were certain changes that were made in the plans and specifications, which were authorized by the commissioners' court. There were other changes made on which the evidence was conflicting as to whether same had been authorized by the commissioners' court. There were some changes that may have been material and others that may not have been material. Under this issue the jury were turned loose, without any guideposts, to determine whether any material change had been made in the construction of the roads, regardless of whether an issue relative thereto had been joined by either the pleadings or proof. Hewitt v. Buchanan (Tex. Civ. App.) 4 S.W.(2d) 169, and authorities there cited; Totten v. Houghton (Tex. Civ. App.) 2 S.W. (2d) 530; Hanover Co. v. Hines (Tex. Civ. App.) 11 S.W.(2d) 621; Varnes v. Dean (Tex. Civ. App.) 228 S. W. 1017; Missouri, K. & T. Ry. Co. v. Long (Tex. Com. App.) 299 S. W. 854.

Appellants contend that special issue No. 6 as submitted was multifarious, in that it submitted several different issues; and, further, that said issue was in the nature of a general charge and tended to confuse the jury.

We sustain these assignments. There is submitted by said special issue No. 6 a number of separate and distinct issues. By said issue the jury were called upon to determine: (1) Whether Boyett and Kennedy conspired to procure approval of estimates; (2) whether Boyett and Kennedy at the time they conspired, if they did, had knowledge of the fact that Brammer & Wilder had not constructed the roads in compliance with the contract; and (3) whether or not the roads were constructed in compliance with the contract at the time they did so conspire. The issue also embraces the same three questions as they would separately relate to a conspiracy between Boyett and Brammer & Wilder, and as between Kennedy and Brammer & Wilder. We think the issue is very confusing and extremely difficult to understand, and as submitted is more in the nature of a general charge than a special issue.

Appellants complain of the action of the trial court in refusing to permit the county engineer, Mr. Boyett, to testify that all the changes, about which he had testified in detail, had been made by the contractors under his supervision and with his authority. We sustain this proposition. The contract specifically authorized the engineer to make changes in the specifications and required the contractors to comply therewith, and makes the acts of the engineer binding an all parties. Unquestionably, any changes that were made by the contractors under the direction of the engineer, if the engineer was acting in good faith, were absolutely binding upon the county. Boettler v. Tendick, 73 Tex. 488, 11 S. W. 497, 5 L. R. A. 270; Kilgore v. Baptist Society, 89 Tex. 465, 35 S. W. 145. The contractors had a right to show, if they could, by the engineer, that the admitted changes made by them in the specifications in the construction of the roads were done under his direction and orders. The question of whether the engineer was acting in good faith when he authorized the changes to be made was for the jury to determine under proper instructions.

For the errors indicated, the judgment of the trial court is reversed and the cause remanded.

On Motions for Rehearing.

Appellees and appellant United States Fidelity & Guaranty Company have each filed a motion for rehearing.

Appellant United States Fidelity & Guaranty Company complains of the failure of this court to pass upon its assignments of error which relate to the action of the trial court in refusing to give its peremptory instruction, and to the action of the trial court in submitting the case on special issues without submitting any issue presenting its defensive matters, and to the action of the trial court in setting aside its original judgment

in its favor and thereafter entering judgment against it in favor of appellee.

The law is well settled that the trial court is required to submit, separately and distinctly, all defensive matters pleaded by the respective defendants upon which there has been submitted any evidence, and it was error for the trial court to refuse to submit the defense pleaded by the appellant United States Fidelity & Guaranty Company on which evidence had been offered. It was further error for the trial court to refuse to submit any defensive matters of the surety company and then render judgment against it.

Appellant surety company further complains of the action of the trial court in refusing to sustain its exceptions to appellees' pleading, in so far as they sought to recover against it for $2,409, which it claimed to have paid appellants Brammer & Wilder for the policing of the roads, and the $78,814.56 which the county claimed to have overpaid Brammer & Wilder. We sustain these assignments. Clearly, the county was not entitled to recover from the surety company any money it had paid Brammer & Wilder not covered by the contract. This question has been definitely settled in favor of the surety company. Hill County v. Bryant & Huffman (Tex. Civ. App.) 264 S. W. 520, and authorities there cited, which holding was specifically upheld by the Supreme Court in the same case, 16 S.W.(2d) 513. In no event would the surety company be liable for any sums of money that the county paid either for the benefit of or directly to Brammer & Wilder which was not paid under the terms and provisions of the contract.

The surety company strenuously contends that the cause should be reversed and rendered so far as it is concerned because of the material changes that were made in the contract, and because of the failure of the county to retain the 10 per cent. retainage required to be kept under the terms thereof. These matters involve questions of fact. They are primarily for the determination of the trial court and jury. The law is well settled that, if the county and contractors made material changes in the contract which were not authorized to be made under the terms of the contract for which the surety company gave its bond, or if the county failed to withhold the percentage required to be held under the terms of the contract, same would release the surety. Lonergan v. San Antonio Loan & Trust Co., 101 Tex. 63, 104 S. W. 1061, 106 S. W. 876, 22 L. R. A. (N. S.) 364, 130 Am. St. Rep. 803; Hess & Skinner Engineering Co. v. Turney, 110 Tex. 148, 216 S. W. 621; Bullard v. Norton, 107 Tex. 571, 182 S. W. 668; Wilson v. J. W. Crowdus Drug Co. (Tex. Com. App.) 222 S. W. 223.

Appellees in their motion for rehearing complain of our failure to determine whether they were bound by the various orders of the commissioners' court and the approval by said court of various estimates, because of a custom that existed in the commissioners' court under which said court passed said orders and approved said estimates by reason of the approval of Commissioner Kennedy, in whose precinct the work was being done, since it was alleged that Kennedy was in the conspiracy with the other parties to defraud the county. The contract for the building of the roads specifically provides in paragraph 3.34(b): "It is mutually agreed between the parties hereto that no estimate or payment made under this contract, except the final estimate or final payment, shall be conclusive evidence of the performance of this contract either wholly or in part against any claim of party of the first part, and then not until the lapse of thirty days after the acceptance of the work by the party of the first part, and no payment shall be construed to be an acceptance of any defective work or improper materials nor a release from any claim for damages."

It is the fundamental law that any order or judgment obtained by or from a court through fraud is voidable, and same is not res adjudicata between the parties and may be set aside upon the establishment of the fact that same was obtained through fraud. If as a matter of fact a fraud was perpetrated upon the commissioners' court, either by a member of said court or by an outsider, it would have the same effect as though a fraud were perpetrated upon a judge sitting in the trial of a case. Where fraud has been practiced and a judgment has been obtained by reason thereof, it has been universally held by our courts that same will be set aside upon the establishment of said fact. Buchanan v. Bilger, 64 Tex. 589; De Garcia v. S. A. & A. P. Ry. Co. (Tex. Civ. App.) 77 S. W. 275 (error refused); Richmond v. Sangster (Tex. Civ. App.) 217 S. W. 723 (error refused); Hayes v. Texas Employers' Insurance Ass'n (Tex. Civ. App.) 254 S. W. 501.

Both motions for rehearing are overruled.