**FIRST HEIGHTS BANK, FSB, Appellant,**

v.

**Josef MAROM and Marcus Investments Corporation, Appellees.**

No. 14–94–00034–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 7, 1996.

H. Miles Cohn, Houston, for appellant.

Fritz Barnett, Houston, for appellees.

Before MURPHY, C.J., and ANDERSON and HUDSON, JJ.

## OPINION

ANDERSON, Justice.

First Heights Bank (the Bank) appeals the trial court's judgment finalizing an agreed interlocutory judgment between the Bank and appellees, Marcus Investments, Inc., and Josef Marom. The Bank contends the trial court erred in signing an agreed interlocu-

tory judgment and a final judgment after it withdrew its consent. The Bank further contends the trial court abused its discretion by not setting aside the agreed judgment because its consent to the agreed judgment was procured by fraud. We affirm.

First Heights Bank filed suit against Josef Marom, Marcus Investments, Inc., and Raphael Weizman to collect more than $6 million owed under a promissory note and guaranties. Relying upon representations Marom made in an Examination Under Oath concerning appellees' financial conditions, the Bank agreed to accept a judgment against appellees for only $10,000. On February 16, 1993, the Bank and appellees filed a Joint Motion for Entry of Agreed Interlocutory Judgment. The Bank claims, however, that before entry of the interlocutory judgment it learned that Marom lied about material information regarding, among other things, his financial condition, corporate affiliations, and relationships with persons to whom he had transferred property. Had the Bank known the truth about these matters, it contends, it would not have agreed to the $10,000 judgment. On February 25, 1993, the trial court signed the Agreed Interlocutory Judgment. The trial court entered a final judgment on December 1, 1993.

In its first point of error, the Bank contends the trial court erred in signing the Agreed Interlocutory Judgment because the trial court had been notified that the Bank had withdrawn its consent to the judgment. A court cannot render a valid consent judgment unless, at the time of rendition, all parties consent to the agreement underlying the judgment. *Davis v. Wickham,* 917 S.W.2d 414, 416 (Tex.App.—Houston [14th Dist.] 1996, no writ). Moreover, a trial court should not enter an agreed judgment if it possesses information that would reasonably prompt further inquiry, and such inquiry, if pursued, would disclose a lack of consent. *Burnaman v. Heaton,* 150 Tex. 333, 339, 240 S.W.2d 288, 291–92 (Tex.1951); *Gregory v. White,* 604 S.W.2d 402, 403 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e), *cert. denied,* 452 U.S. 939, 101 S.Ct. 3081, 69 L.Ed.2d 953 (1981). A party may revoke its consent at any time before the judgment is

rendered. *S & A Restaurant Corp. v. Leal,* 892 S.W.2d 855, 857 (Tex.1995); *Hahne v. Hahne,* 663 S.W.2d 77, 79 (Tex.App.—Houston [14th Dist.] 1984, no writ).

In this case, the record reflects that the trial court signed and entered the Agreed Interlocutory Judgment on February 25, 1993. On March 1, 1993, the Bank filed a letter dated February 25, 1993, in which the Bank stated that it "may withdraw" the Agreed Interlocutory Judgment and asked the court to "refrain from signing" the Agreed Interlocutory Judgment pending an investigation.[1] Consequently, at the time the trial court entered the agreed judgment, it was unaware of the Bank's objection to the agreed settlement, or of any information that would prompt further inquiry. Because the Bank was too late in voicing its dissatisfaction with the judgment, it failed to timely repudiate its consent. The trial court did not err in signing the Agreed Interlocutory Judgment. Appellant's first point of error is overruled.

▆▆▆ In its second point of error, the Bank maintains the trial court lacked authority to enter a final judgment incorporating the Agreed Interlocutory Judgment because the Bank withdrew its consent in the letter dated February 25, 1993, and in its Motion to Set Aside Agreed Interlocutory Judgment filed October 13, 1993. A trial court has the power to set aside an interlocutory judgment at any time prior to the entry of a final judgment. *Buffalo Ranch Co., Ltd. v. Burleson County Appraisal Dist.,* 783 S.W.2d 748, 749 (Tex.App.—Houston [14th Dist.] 1990, no writ). However, an *agreed* interlocutory judgment is governed by the same rules as an agreed final judgment. *Gregory,* 604 S.W.2d at 403–04 (stating that "[a]n agreed interlocutory judgment would be of little value if its terms could be avoided by the with-

drawal of consent of one of the parties") (emphasis added).

▆▆▆ The Bank confuses the requirements for rendition of a judgment based on an agreement of the parties, with those for the entry of a final judgment incorporating the terms of such agreed judgment. The apparent essence of the Bank's argument is that the interlocutory agreed judgment is no more than an agreement between the parties until a final judgment is entered. The Bank, however, ignores the distinction between an agreement between the parties pertaining to a law suit, and an agreed judgment incorporating the terms of the parties' agreement. For the former, it is clear that consent may be withdrawn prior to the entry of a judgment incorporating the agreement of the parties, and that entry of a judgment in the absence of that continuing consent is prohibited. *Burnaman,* 246 S.W.2d at 291 (holding that where trial court was aware of plaintiff's objection, but proceeded to render consent judgment incorporating terms of settlement, consent judgment was improper since contemporaneous consent was lacking).

▆▆▆ Conversely, once the trial court renders an agreed judgment, a party may not withdraw its consent if at the time of rendition the trial court was not aware of any objection. *See Gregory,* 604 S.W.2d at 403 (stating this rule is simply an application of the general principle that one cannot complain of that to which he has agreed). *See also Arriaga v. Cavazos,* 880 S.W.2d 830, 833 (Tex.App.—San Antonio 1994, no writ) *(citing Quintero v. Jim Walter Homes, Inc.,* 654 S.W.2d 442, 444 (Tex.1983)) (stating that a party has the right to withdraw his consent to an agreement to settle the issue in dispute at any time before the rendition of judgment, but not after). Rendition is distinguishable from the entry of judgment which is a purely ministerial act by which judgment is made of

---

1. In its brief, the Bank asserts that its counsel *delivered* the February 25, 1993 letter to the trial court. (emphasis added). In fact, Susan Smith, a Bank vice-president, testified that the letter was "filed with the court." Rule 74 of the Texas Rules of Civil Procedure provides that "[t]he filing of pleadings, other papers and exhibits ... shall be made by filing them with the clerk of the court, except that the judge may permit the pa-

pers to be filed with him, in which event he shall note thereon the filing date and time and forthwith transmit them to the office of the clerk." TEX.R.CIV.PROC. 74. Inasmuch as March 1st is the only file date on the February 25th letter, we conclude that March 1st is the date the Bank filed the letter and the date the trial court first became aware of the Bank's reluctance to continue with the settlement.

record and preserved. *Id.* Here, in substance, the agreed interlocutory judgment dated February 25, 1993 was tantamount to a judicial rendition, and the final judgment incorporating its elements constituted the actual entry of the judgment. Because the Bank attempted to withdraw its consent *after* the trial court accepted the settlement and so noted in an interlocutory order, its efforts were too late.

Moreover, we disagree with the Bank's assertion that its Motion to Set Aside deprived the trial court of the authority to enter a final judgment. Indeed, the contrary is true. Because it was an agreed judgment, the trial court had no authority to dissolve the contractual rights of the parties. *Spiller v. Sherrill,* 518 S.W.2d 268, 272 (Tex.App.—San Antonio 1974, no writ). Point of error two is overruled.

In its third point of error, the Bank contends the trial court abused its discretion [2] by first denying its Motion to Set Aside the Agreed Interlocutory Judgment and then entering a final judgment because it established, as a matter of law, that appellees procured its consent to the Agreed Interlocutory Judgment by fraud. As a general rule, a final judgment entered by agreement is contractual in nature and is not to be set aside absent a showing of fraud. *Rawlins v. Stahl,* 329 S.W.2d 308, 311 (Tex.Civ.App.—Dallas 1959, no writ); *Brammer & Wilder v. Limestone County,* 24 S.W.2d 99, 105 (Tex. Civ.App.—Waco 1930, writ dism'd w.o.j.) (op. on reh'g) (stating that any judgment obtained through fraud is voidable, and may be set aside upon the establishment of fraud). *See also Kennedy v. Hyde,* 682 S.W.2d 525, 529 (Tex.1984) (stating that an agreement in compliance with Rule 11 is subject to attack on the grounds of fraud or mistake). To establish fraud, the Bank must prove that (1) Marom made a material representation that was false; (2) Marom knew it was false when he made the representation; (3) Marom in-

tended the Bank to act upon the false representation; (4) the Bank acted in reliance upon the representation; and (5) the Bank thereby suffered injury. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso,* 847 S.W.2d 218, 222 (Tex.1992).

Specifically, the Bank asserts that Marom made the following material representations that he knew to be false and upon which the Bank relied in agreeing to settle its claims for $10,000: (1) Marom was no longer associated with North Florida Development Corporation; (2) Batia Ben Porat, the trustee of his children's trust fund, was a person from Israel who he and his wife trusted; (3) Marom was not a defendant in any other lawsuits; and (4) Marom had made no transfers of real property other than those set forth in the divorce decree within four years of the Examination Under Oath. In support of these assertions, Susan Smith, Assistant Vice-President of First Heights Bank, testified that the Bank utilized Marom's Examination Under Oath to verify Marom's financial status and determine whether Marom possessed collectible assets to satisfy the Bank's deficiency claim before proceeding to trial or obtaining regulatory approval of a settlement. The Bank also attached to its Motion to Set Aside the affidavits of Smith and the Bank's attorney, as well as numerous warranty deeds signed by Marom as president of North Florida Development Corporation.

The Bank first asserts that Marom lied during the Examination Under Oath by failing to disclose his present title as President of North Florida Development Corporation in the following exchange:

Q. What was your role or title, your capacity with regard to North Florida Development Corporation?

A. I was—when it was started, I was the President of North Florida Development Corporation.

---

2. A trial court has broad discretion to grant a new trial, before or after judgment. *Champion Int'l Corp. v. Twelfth Court of Appeals,* 762 S.W.2d 898, 899 (Tex.1988) (orig. proceeding). Here, the Bank's Motion to Set Aside the Agreed Interlocutory Judgment was the equivalent of a motion for new trial based on newly discovered evidence. Whether to grant or deny a motion for new trial based on newly discovered evidence is within the sound discretion of the trial court, and an appellate court will not disturb the trial court's decision absent a manifest abuse of discretion. *Jackson v. Van Winkle,* 660 S.W.2d 807, 809 (Tex.1983).

Q. You said when it started. Did your title change as time went on?

A. I'm—I'm no longer associated with it.

In support of this assertion, the Bank attached to its Motion to Set Aside a copy of a general warranty deed that Marom executed as the president of North Florida Corporation one day after the Examination.

Appellees maintain that Marom falsely answered the question as to his "financial association" with North Florida Development Corporation, the subject of the Examination Under Oath. Marom stated in the Examination Under Oath that he had no financial association with the company since 1987. Moreover, in his affidavit attached to appellees' Response to the Motion to Set Aside,[3] Marom further explained that he had abandoned any ownership interest in the North Florida Corporation when he realized it would not be a successful venture, and that his mother and father were the only shareholders in the corporation. Marom explained, "I have remained president of the corporation because from time to time my father has requested I handle certain real estate transactions on behalf of the corporation since my father and mother live in Israel. Other than my title as president, I have no association." In addition, he argues, "I never did tell [the Bank's attorney] I was not president, nor did she ask."

Next, the Bank accuses Marom of lying by not divulging that Batia Ben Porat, trustee of his children's trust fund, is his sister. However, the record reflects that the Bank did not specifically ask the nature of the relationship between Marom and Batia Ben Porat. Rather, the following exchange occurred:

Q. What is the 1986 Marom Gift Trust?

A. It was—my ex-father-in-law, Arn Sworsbon—we had a child, my ex-wife and I had a child in 1985 and he thought it would be beneficial to have a gift trust for her and for future children, if we had any—which we did—to provide for the future, college and—and so on. So, we assisted in— in forming this—this gift trust and we had known *somebody who was from Israel,* Batia Ben Perat [sic]; and we asked her if she would become a trustee and she said yes. So she became trustee for that trust. (emphasis added).

Later, when asked if he had transferred any property to the trustee, Marom repeated his assertion that Batia Ben Porat was a person that both he and his ex-wife knew from Israel and trusted to become the trustee.

Thirdly, the Bank complains that Marom lied when he stated that he was not a defendant in any other lawsuits. Appellees concede that Marom misstated the fact that he was one of thirteen defendants in a frivolous lawsuit in California filed by a former partner of North Florida Development Corporation. In his affidavit Marom explains as follows:

At the time I was asked the question, I did not remember that I was named in that lawsuit. . . . It was certainly unintentional that I did not recall that I was a party to that inconsequential litigation. I did not attempt to deceive First Heights, I just simply forgot.

Finally, the Bank alleges that Marom failed to disclose transfers of real property which he made within four years of the Examination Under Oath, other than those set forth in the divorce decree. In the Motion to Set Aside the Bank specifically asserts that Marom failed to disclose a transfer of a general partnership interest in the Turtle Creek Apartment, Ltd. to others. However, the record reflects that Marom disclosed the sale of his interest in the Turtle Creek Apartments, and presented evidence that other conveyances were merely the means to clear title to certain property.

Given Marom's explanations, which, if believed, are plausible, we find the Bank failed to prove that the Agreed Interlocutory Judgment was procured by fraud on the part of appellees. Therefore, the trial court did not abuse its discretion by denying the Bank's Motion to Set Aside the Agreed Interlocu-

---

**3.** Marom also attested that English is not his native language. His principal languages are Romanian and Hebrew. Although he speaks English and has attended the University of Houston, Marom acknowledged that at times he does not understand everything fully.

tory Judgment and entering a final judgment. The Bank's third point of error is overruled.

Accordingly, the judgment of the court below is affirmed.